CALVIN T. CHAMBERLAIN, for himself and others, *v.* THOMAS J. CHAMBERLAIN et al.

The existence of corporations organized under the laws of a sister State is recognized by the courts of this State, and they may take personal property under wills executed by citizens of this State, if by the laws of their creation they have authority to acquire property by bequest.

The courts of this State will not administer a foreign charity; but they will direct money devoted to it to be paid over to the proper parties, leaving it to the courts of the State, where the charity is to be established, to provide for its due administration.

The law of the testator's domicil controls as to the formal requisites essential to the validity of the will, the capacity of the testator, and the construction of the instrument.

When by the *lex domicilii* a will has all the formal requisites to pass title to personalty, the validity of particular bequests will depend upon the law of the domicil of the legatee, except in cases where the law of the domicil of the testator in terms forbids bequests for any particular purpose, or in any particular manner, in which latter case the bequest would be void everywhere.

The policy of this State does not interdict perpetuities or gifts in mortmain in other States.

When there is an apparent discrepancy between two statutes, such exposition should be made as that if possible both may stand together; and the

acts of 1840 and 1841, authorizing charitable and educational corporations to take property in trust, without any expressed limit, are not to be construed as extending the capacity to take, by their charters limited to a fixed sum.

For the purpose of ascertaining the estate, only half of which can be devised to charitable or educational corporations, under the act of 1860, the widow's dower and the debts are to be first deducted.

A testator cannot give to two or more corporations in the aggregate more than he can give to a single object, viz., one-half of his estate.

Under a condition requiring the devisee or legatee (the widow as well others) to renounce all claim to any share or interest in the estate other than as given by the will, without exception, the court cannot except from the operation and effect of the condition any part of the estate, although its attempted disposition by other clauses in the will is held invalid.

A suit brought by a widow to set aside an instrument by which she elected to accept certain provisions of the will in lieu of dower, is not a proceeding for the recovery of dower, within the meaning of the Revised Statutes, compelling her to take such proceeding within a year.

(Argued November 23, 28, 29 and 30, 1870; decided January 24, 1871.)

APPEAL from the judgment of the late General Term of the Supreme Court, in the eighth district, affirming in part and in part modifying the judgment of the Special Term.

Action by the plaintiff, as one of the heirs-at-law and next of kin of Benjamin Chamberlain, deceased, in his own right, and for his own benefit, as well as for the benefit and in behalf of the other heirs-at-law and next of kin of the deceased, against the executors and the devisees and legatees, claiming under the will of the deceased, for a judicial construction of the will, and to avoid certain parts and provisions thereof, and for a distribution of the estate, real and personal, among those entitled, either under the will or as heirs and next of kin, as the court shall determine the rights of the several claimants. The testator was, at the time of his death, and for many years had been, a resident of the county of Cattaraugus, in this State. His will bears date December 16, 1867, and he died February 10, 1868. The will was admitted to probate by the surrogate of Cattaraugus county, on the 22d day of April, 1868. The testator left a large estate, both real and personal,

the latter being estimated and valued at $250,000; and, after paying all the just debts of the testator, and all his specific bequests, more than one-half of the estate will pass into and constitute the residuary fund sought to be disposed of by the eighteenth clause of the will to the Centenary Fund Society, a corporation created under the laws of Pennsylvania for charitable and benevolent purposes, and the Chamberlain Institute, an educational institution in Cattaraugus county. By the second, third and fourth clauses of the will, devises and bequests are made to and for the benefit of the widow of the testator, who survived him, and is still living. By the twentieth clause of the will, it was declared that the provisions made for the widow should be in lieu of dower; and, if she accepted the provisions made for her, she should not be entitled to dower in the property of the testator, or to receive any other share or interest in his estate. On the 22d day of April, 1868, and before the proof of the will, the widow executed and acknowledged a paper declaring her election to accept the provisions made for her by the will, and renouncing and releasing the estate and every part thereof, and the executors and the heirs-at-law and next of kin, of and from all interest, claim, right, dower and distributive share in or to the estate and every part thereof. The judge, before whom this action was tried, has found that, in signing and acknowledging this paper, the widow acted without a full knowledge and understanding of her right in the testator's estate, and of her situation, and in ignorance of the consequences of her acceptance of the provisions of the will in lieu of dower, and that she executed said instrument supposing it to be a mere election to take under the will; and, as to the other and remaining provisions therein contained, they were incorporated and inserted in said instrument against her will and without her knowledge, and that she executed the same in ignorance that they were embraced therein.

In September, 1868, the widow brought an action in the Supreme Court to set aside the instrument, and for her rights in the estate and property, real and personal, of the testator,

*as his widow*, which action was pending at the time of the trial of this action, in January, 1869. The court below has adjudged and decided that the instrument of election and release, executed by the widow, should be set aside, vacated and held for naught, and that the action commenced by her was a proceeding for the recovery of dower within one year after the death of her husband, and that she was entitled to dower. The plaintiff appeals from this part of the judgment. By the fifth to the seventeenth clauses of the will, inclusive, sundry specific bequests were made, the validity of which are not questioned. By the eighteenth clause, the testator directed that all his estate, not otherwise disposed of, be divided into two equal parts, and one of said parts be paid to the Centenary Fund Society of the Erie Annual Conference of the Methodist Episcopal Church, to be by said corporation invested and kept permanently invested, and the interest and income thereof used and expended by said corporation for the benefit of Allegany College, at Meadville, Pennsylvania, in such manner and for such specific purposes as said corporation shall direct; and that the other of said parts be paid to the trustees of the Chamberlain Institute, to be by said trustees permanently invested in bonds and mortgages; the principal to be kept permanently invested, and the interest and income thereof to be used in the payment of the salaries of teachers and in the purchase of books and apparatus for the library of the institution. By the twenty-second clause of the will, the executors were authorized and empowered, for the purpose of executing the trusts, to sell and convert into cash all the real and personal estate of the testator.

The Centenary Fund Society became incorporated in 1843, pursuant to a general law of the State of Pennsylvania, passed in 1791, and amended in 1833 and 1840, authorizing the formation of corporations with authority to take and hold land, money, chattels, etc., given and bequeathed to them, to be employed and disposed of according to the objects, articles and conditions of the organization, or the articles and by-laws of the corporation, or of the will and intention of the donors.

The object and purpose of the corporation, as declared in the organic articles, was for the better securing the appropriation of funds recommended and proposed to be raised "to the charitable purpose of the relief and sustenance of the traveling preachers attached to said conference who may be distressed, worn out, or superannuated; their wives, widows or children, and *for the support of liberal education under the directions of said conference.*" By an act of the legislature of Pennsylvania passed in 1860, the Centenary Fund Society was authorized to take, receive and hold property, according to the objects of its articles, provided a clear yearly income of its property should not exceed at any time $10,000.

Alleghany College was incorporated by the legislature of Pennsylvania in 1817, for the education of youth in the learned ancient and modern languages, in the liberal arts and sciences, and in all useful literature, with power to take property to and for the use of the college, by gift, grant, devise or bequest, to the yearly value of $15,000.

The Chamberlain Institute was incorporated by the regents of the university of this State as the "Randolph Academy," pursuant to the provisions of the Revised Statutes, and took its present name by authority of chapter 517, of the Laws of 1866. The judge upon the trial found as a fact that, by the laws of Pennsylvania, the bequest in trust to the Centenary Fund Society for the benefit of Alleghany College was valid, would be there upheld, and that the same was not in violation of the law of that State in relation to perpetuities. The Supreme Court adjudged the gift and bequest to the Centenary Fund Society invalid, illegal and void, and from this part of the judgment that society and Alleghany College have appealed. It was also adjudged that the gift to the Chamberlain Institute was valid to the extent of one-half of the residuary fund attempted to be disposed of by the eighteenth clause of the will, and from this part of the judgment the plaintiff and the widow have appealed. Appeals were also taken from other parts of the judgment designed to give effect to the judgment of the court upon the main questions decided.

*H. R. Selden,* for the plaintiff, that the validity of the bequest must be determined by the laws of this State. (*Holmes* v. *Remsen,* 4 Johns., Chy. 460–469; *Mills* v. *Fogal,* 4 Edw. Ch. R., 559; *Andrews* v. *Herriott,* 4 Cow., 517., note; *Parsons* v. *Lyman,* 20 N. Y., 112; *Bascom* v. *Albertson,* 34 id., 587; 2 Kent Com., 429–431; Story Confl. of Laws, §§ 465, 479*a,* 1 Redfield on Wills, 394–399, 3 ed.) That the terms of the will work an equitable conversion of the whole estate into personalty. (*Phelps* v. *Pond,* 23 N. Y., 69–76; *Stagg* v. *Jackson,* 1 Comst., 206; *Thornton* v. *Hawley,* 10 Ves., 129; 3 Comst., 242; Leigh & Dalzell on Eq. Con., 5–15; 5 Law Lib.) If the residuary bequest is void, the conversion does not take effect. (*Bogert* v. *Hertell,* 4 Hill, 492; *Hawley* v. *James,* 5 Paige, 318–444; S. C., 7 id., 213–219; *King* v. *Rundle,* 15 Barb., 150; *Hewett* v. *Wright,* 1 Bro., C, C., 86, and note 1, etc.) That the charitable trusts are subject to our statute of perpetuities. (*Yates* v. *Yates,* 9 Barb., 324; *Levy* v. *Levy,* 33 N. Y., 97; *Bascom* v. *Albertson,* 34 id., 584; *Ayres* v. *Methodist Church,* 3 Sandf., S. C., 368.) That the will did not give the Centenary Fund Society the absolute ownership of the fund. (*Everitt* v. *Everitt,* 29 N. Y., 71; *Gott* v. *Cook,* 7 Paige, 522–536; *Hawley* v. *James,* 5 id., 444, 445; *Williams* v. *Williams,* 8 N. Y., 531; *Levy* v. *Levy,* 33 id., 124–134; *Yates* v. *Yates,* 9 Barb., 333–4.) That the gift to the trustees of the Chamberlain Institute is a bequest to the institute. (13 John., 38; 17 Wend., 42; 6 Hill, 476; 6 Seld., 48.) The bequest is within the provisions of the acts of 1840 and 1841. (Sess. Laws 1840, chap. 318, page 267; Sess. Laws 1841, chap. 361*a,* 245.) Repeals of statutes by implication are not favored. (*Bowen* v. *Lease,* 5 Hill, 225–6; 9 Cow., 506–7.) The intent of the law-giver is to be gathered from the whole statutes. (15 Johns., 380–1; 22 Wend., 397; 5 Barb., 159; Plowden, 465; *Harris* v. *Slaight,* 46 Barb., 470; S. C. on Appeal, 4 Abbt., N. S., 421.) Against the claims of the widow, he urged, that ignorance of the law does not justify the setting aside of an instrument made with full knowledge of the

facts; that the instrument of election should not have been declared void. (*Davenhill* v. *Fletcher*, Ambler, 244; *Spofford* v. *Manning*, 6 Paige, 389.) That the acceptance of a benefit under a will requires an acquiescence in all its provisions. (*Glen* v. *Fisher*, 6 Johns., Ch. R. 35; *Jackson* v. *Churchill*, 7 Cow., 287; *Ambler and wife* v. *Norton*, 4 Hen. & Munf., 23.) The widow cannot claim under and adverse to the will. (12 Pick., 150; *Boughton* v. *Boughton*, 2 Ves., Sen., 12–15.) To sustain rule that extinguishment of dower is a contract between husband and wife. (*Burridge* v. *Brady*, 1 P. Wms., 127; *Blower* v. *Morrett*, 2 Ves., Sen., 420; *Davenhill* v. *Fletcher*, Ambler, 244; *Heath* v. *Durdy*, 1 Russ., 543.)

*D. H. Bolles*, also for the plaintiffs, as to what questions are determined by the law of the testator's domicil, cited *Bascom* v. *Albertson* (34 N. Y., 584). That the bequests, except that to the Chamberlain Institute, are void. (Sec. 1, title 4, chap. 4, part 2, Rev. Stat.; *Hawley* v. *James*, 16 Wend., 96; *Banks* v. *Phelan*, 4 Barb., 80–88; *King* v. *Rundle*, 15 id., 139, 144–149.)

*George F. Comstock*, for the Centenary Fund Society and the Allegany College. That the gift was not upon a trust. (*Williams* v. *Williams*, 4 Seld., 536; *Levy* v. *Levy*, 33 N. Y., 97; *Bascom* v. *Albertson*, 34 N. Y., 599; *In the Matter of How*, 1 Paige, 214.) Even admitting a trust. (2 Howard U. S., 127; 24 id., 505; *Levy* v. *Levy*, 33 N. Y., 97, 99–136.) That the law of perpetuity is to be distinguished from mortmain. (Kyd on Corporations, p. 39; Shelford on Mortmain, pp. 26, 27.)

*A. G. Rice*, for the Chamberlain Institute, cited *Levy* v. *Levy* (33 N. Y., 97); *Sherwood* v. *The Am. Bible Soc.* (1 Keyes, 561); *Kane* v. *Gott* (24 Wend., 662). That the State only can set up a forfeiture by alienation in mortmain, and that heirs are bound by the alienation. (2 Black. Com., 268, and note; 2 Kent Com., 282, and note.) That mortmain

acts apply to personalty. (Angell & Ames on Corp., chap. 5, pp. 91, 92, 93, and cases cited; *Humbert* v. *Trinity Church*, 24 Wend., 587, 630 ; *Bogardus* v. *Trinity Church*, 4 Sandf. Ch. R., 633, 758.)

*John Ganson*, for Lucy Chamberlain, the widow. That instrument of release was properly set aside. (*Botsford* v. *McLean*, 45 Bar., 478, 486, 490 ; *Sears* v. *Shafer*, 2 Seld., 268, 274 ; *Bush* v. *Lee*, 36 N. Y., 49, 52.) That to be bound by an election, it must be shown to have been made with full knowledge of the facts and the rights of the parties. (Redfield on Wills, part 2d, pp. 749, 750, § 21 ; *Edwards* v. *Morgan*, 13 Price, 782 ; *Wake* v. *Wake*, 1 Ves. Jun., 336 ; *Brice* v. *Brice*, 2 Malloy, 21.) That it is not necessary to prove fraud. (*Persey* v. *Debonaire*, 3 P. Wms., 315 ; 2 Roper on Legacies, p. 396, chap. 23, § 2, subd. 4.) That appellant must show error. (*Mead* v. *Bunn*, 32 N. Y., 275, 279 ; *Carman* v. *Pultz*, 21 N. Y., 547, 551.) That the action to set aside the instrument of release was a proceeding to recover dower. (*Mundy* v. *Mundy*, 2 Ves. Jun., 122 ; *Badgley* v. *Brice*, 4 Paige, 98 ; *Bidwell* v. *The Astor Mutual Insurance Co.*, 16 N. Y., 263.) That the widow was entitled to a distributive share in the personalty ineffectually disposed of. (*Pickering* v. *Stamford*, 2 Ves. Jun., 272, 581 ; same case, 3 Ves., 331, 492 ; 2 Redfield on Wills, p. 749 ; 1 Jarman on Wills, 440 ; 2 Roper on Legacies, p. 425, chap. 23, § 3.) The provision in lieu of dower does not bar widow, if the legatee cannot take. (*Pickering* v. *Stamford*, *supra* ; 2 Williams on Executors, 1279, 2 Roper on Husband and Wife, 24 ; 2 Roper on Legacies, 425 ; *Haxton* v. *Corse*, 2 Barb. Ch. R., 506, 521 ; *Dean* v. *Gaskin*, Cowper Rep., 657.) In reference to the Chamberlain Institute. (4 Abb. P. R., N. S., 421 ; 4 Trans. of Appeals, 485 ; *Harris* v. *Haight*, 46 Barb., 470, 505 ; *Downing* v. *Marshall*, 23 N. Y., 366, 386.)

ALLEN, J. If the residuary bequests are valid, there was an equitable conversion of the whole estate into personalty

for all the purposes of the will. The gifts were of money, the avails of the real and personal estate, and the conversion of the realty into personalty under the authority conferred upon the executors, is regarded as having been accomplished at the death of the testator. (Leigh & Dalzell on Eq. Conversion, 5, 109 ; *Phelps* v. *Pond*, 23 N. Y., 69 ; *Thornton* v. *Hanly*, 10 Vesey, 129 ; *Stagg* v. *Jackson*, 1 Comst., 206.) If, therefore, the disposition of the residue of the estate in favor of the two corporations named as legatees is valid as a bequest of personal property, and to the extent that the two corporations can take under the will, regarding the gift as of personalty and not of realty, the will must stand. The Centenary Fund Society is a foreign corporation, having its existence under the laws of Pennsylvania, and located within that State. The existence, however, of corporations organized under the laws of a sister State is recognized by the courts of this State, and they may take property here under wills executed by citizens of the State, if, by the law of their creation, they have authority to acquire property by devise or bequest. (*Sherwood* v. *Am. Bible Society*, 1 Keyes, 565 ; *Harris* v. *Same*, Ct. of Appeals, 4 Abbott's N. S., 421.) That the corporation named was erected for charitable purposes, and the bequest to it is for a charity, is not material, if the bequest is not for some other reason invalid. The courts of this State will not administer a foreign charity, but they will direct money devoted to it to be paid over to the proper parties, leaving it to the courts of the State within which the charity is to be established, to provide for its due administration and for the proper application of the legacy. (Hill on Trustees, 468 ; 2 Story on Equity Jurisprudence, § 430 ; *Prevost of Edinburgh* v. *Aubrey*, Ambler, 236 ; *Burbank* v. *Whitney*, 24 Pick., 154 ; *Att'y-General* v. *Lepine*, 2 Swanst, 181.) There is no objection to the form or manner of execution of the will or the capacity of the testator, neither is it claimed that by the terms of the instrument the property would not pass, as claimed by the legatees. The law of the testator's domicil controls, as to the formal requisites essential to the validity of the will as

a means of transmitting property, the capacity of the testator and the construction of the instrument. (*Andrews* v. *Herriot*, 4 Cow. R., 517; *Holmes* v. *Remsen*, 4 J. C. R., 469; *Parsons* v. *Lyman*, 20 N. Y., 103.) Personal property has no locality, and therefore the law of the domicil of the owner governs its transmission, either by last will and testament or by succession in case of intestacy. (2 Kent Com., 429; *Moulton* v. *Hunt*, 23 N. Y., 394; *Lawrence* v. *Kitteridge*, 21 Conn., 577.) But if, within the *lex domicilii*, a will has all the forms and requisites to pass the title to personalty, the validity of particular bequests will depend upon the law of the domicil of the legatee and of the government to which the fund is by the terms of the will to be transmitted for administration, and the particular purposes indicated by the testator. Whatever may be the law of Pennsylvania, a testator domiciled in that State cannot establish by bequests of personalty to citizens or corporations of this State, a charity in trust to be administered here inconsistent with the policy or the laws of this State. A gift by will of a citizen of this State to a charity, or upon a trust to be administered in a sister State which would be lawful in this State, the domicil of the donor, would not be sustained, if it was not in accordance with the laws of the State, in which the fund was to be administered. Bequests in aid of foreign charities, valid and legal, in the place of their existence, will be supported by the courts of the State in which the bequests are made. (Hill on Trustees, 457.) If the legatee, whether a natural or artificial person, and whether he takes in his own right or in trust, is capable, by the law of his domicil, to take the legacy in the capacity and for the purposes for which it is given, and the bequest is in other respects valid, it will be sustained, irrespective of the law of the testator's domicil; subject, however, to this qualification, that if the law of the testator's domicil, in terms, forbid bequests for any particular purpose, or in any other way limit the capacity of the testator in the disposal of his property by will, a gift in contravention of the law of the testator's domicil would be void everywhere.

But so far as the validity of bequests depends upon the general law and policy of the State affecting property and its acquisition generally, and relating to its accumulation and a suspension of ownership and the power of alienation, each State is sovereign as to all property within its territory, whether real or personal.

It is no part of the policy of the State of New York to interdict perpetuities or gifts in mortmain in Pennsylvania or California. Each State determines those matters according to it own views of policy or right, and no other State has any interest in the question; and there is no reason why the courts of this State should follow the funds bequeathed to the Centenary Fund Society to Pennsylvania, to see whether they will be there administered in all respects in strict harmony with our policy and our laws. The question was before the court in *Fordyce* v. *Bridges* (2 Phillips, 497), upon the bequest of a fund in England, to be invested in a Scotch entail. Lord COTTENHAM says: "An objection was made that the bequest of a fund, to be invested in a regular Scotch entail, was void as a perpetuity. The rules acted upon by the courts in this country with respect to testamentary dispositions tending to perpetuities, relate to this country only. What the law of Scotland may be upon such a subject the courts of this country have no judicial knowledge, nor will they, I apprehend, inquire. The fund being to be administered in a foreign country is payable here, though the purpose to which it is to be applied would have been illegal, if the administration of the fund had been to take place in this country. This is exemplified by the well-established rule in cases of bequests within the statute of mortmain. A charity legacy, void in this country under the statute of mortmain, is good and payable here if for a charity in Scotland." To the same effect is *Vanzant* v. *Roberts* (3 Maryland, 119). In *Bascom* v. *Albertson* (34 N. Y., 584) there was neither trustee or *cestui que trust*, and there was a suspension of the absolute ownership for an indefinite period, and not dependent upon lives in being; and the bequest was void for those

reasons, and so held by the court. The case of *Wood* v. *Wood* (5 Paige, 596) was peculiar in its circumstances, and can, in view of the final disposition of it by the chancellor, scarcely be regarded as a precedent. The will sought to make provision for infant children domiciled in the State, and wards of the court, by investments in real estate in Ohio upon trusts and limitations which were illegal in this State, and entirely unsuited to the wants and condition of the children ; and the chancellor, without making a final decree, pronounced the opinion, and recommended a compromise by the parties.

There certainly is no good reason, growing out of the policy or the laws of this State, why a testator, domiciled here, might not make provision, by a bequest of money to trustees, to be invested in an estate for his son in-tail, in a State where entails are allowed.

Upon principle, as well as authority, the validity of the bequest to the Centenary Fund Society must be tested by the laws of Pennsylvania. The fact is found, that the bequest in trust is not in violation of the laws of that State in regard to perpetuities. It has not been claimed by counsel that the policy or the laws of Pennsylvania prohibit gifts of property to be held and used precisely as this is directed to be held and used by the Centenary Fund Society. No allusion has been made to the laws of that State regulating or restraining the accumulation of personal property or the suspension of the ownership and power of alienation of either real or personal there. The validity of the provision in favor of this society depends upon its power to take and hold, in the manner and for the purpose indicated by the testator. By law, the corporation has power to take property or money, by bequest and gift, " to be employed and disposed of, according to the objects, articles and conditions of" the charter, or articles of association, and its by-laws, " *or of the will and intention of the donors.*" The object of the corporation, as declared by its articles, was, in substance, the administration of a fund for certain charitable purposes, " and for the support of liberal

education," under the direction of the Erie Conference of the Methodist Episcopal Church. The only limit to the power of the corporation to take and hold property is imposed by the act of the legislature of Pennsylvania in 1860, providing that the clear yearly income of its real and personal estate should not exceed, at any time, the sum of $10,000. The gift of money, to be expended for the benefit of Allegany College, is " for the support of liberal education," one of the purposes and objects of the Centenary Fund Society, as declared in the articles of association and incorporation, and " a literary purpose," within the terms of the act of the legislature under which the society became incorporated. The bequest was, therefore, for a proper purpose, and the society is authorized to take and retain the same, if not objectionable for some other reason. The corporation is empowered to administer funds intrusted to it for any of the charitable or literary purposes embraced in the organic articles, "according to the will and intention of the donors;" so that the specific direction of the testator, for the preservation of the fund and the expenditure of the income, does not invalidate the gift. The organic law of the corporation declares that it shall carry out the intentions and wishes of the Erie Annual Conference, as set forth in the preamble, that is, the appropriations of the funds of the society to the several objects named and declared to be " under the direction of said conference."

This general direction over the funds and affairs of the corporation, vested in the conference, does not affect or detract from the power conferred upon it to administer funds according to the will of the donor. The will of the donor, in such cases, is the law of the corporation and of the trust, and is impressed upon the fund. The discretion as to the expenditure, vested by the will of the testator in the corporation, takes the fund out of the general direction of the conference. The corporation is the administrator of the charity invested, with discretionary powers as to the specific purposes, within prescribed limits, to which it is to be applied. This is not inconsistent with the general direction given to the conference as

to the appropriation of funds, not specifically appropriated by the donors. Had the testator directed the expenditures in support of a stipulated professorship, or established a scholarship, and directed the income to be paid from year to year to its maintenance, the gift would have been withdrawn from the particular direction of the conference, but would, nevertheless, have been valid as within the general scope of the powers of the corporation. If this is a trust for the benefit of Allegany College, it is in harmony with the provisions of the charter of the society, and in furtherance of the ends and objects of the incorporation. (*Amherst Academy* v. *Cowles*, 6 Pick., 427.)

If it could be shown that an expenditure for the benefit of the college was not for the support of liberal education, the gift would be void, or not within the purposes for which the corporation could take. (See *Harris* v. *The American Bible Society, supra.*)

The bequest to the Centenary Fund Society is valid, except as affected by the limit to the capacity of the testator to give by will to charitable and benevolent purposes imposed by statute, and except that it can take no greater share of the fund than will, at seven per cent per annum, produce an income which will, together with its income from other property, make up the yearly sum of $10,000.

The bequest for the benefit of the Chamberlain Institute, although in terms to the trustees of that institution, is in legal effect a gift to the corporation vesting the legacy in the corporate body. (*N. Y. Institution for the Blind* v. *How*, 10 N. Y. R., 84 ; *Bailey* v. *Onondaga County Mutual Ins. Co.*, 6 Hill, 476 ; *New York African Society* v. *Varick*, 13 J. R., 38.) The institution was chartered as an academy, under the name of the Randolph Academy, and the name was changed by chapter 517, of the Laws of 1866, to " Chamberlain Institute," but by the latter act, no powers were conferred upon the corporation in addition to those possessed by it as an incorporated academy under the general laws of the State. As an incorporated academy, it can take and hold by

gift, grant, or devise, real and personal property, the clear yearly income or revenue of which shall not exceed the value of $4,000. (1 R. S., 462, § 42.) This is the limit of its power to take and hold property, unless the restriction has been partially removed by chapter 318 of the Laws of 1840, and chapter 261, of the Laws of 1841. (A. & A. on Corp., § 152.) By the acts of 1840 and 1841, trusts are authorized to be created by grants, devises, and bequests of property, to any incorporated college, or other literary incorporated institution for specific purposes comprehended in the general objects authorized by the respective charities. By the terms of the acts, no limit in amount or value of property, which can thus be given in trust is prescribed. But these statutes are in no sense repugnant to the general law of the State, limiting and restricting the amount and value of property, which can be taken and held by literary and educational corporations, and the general laws are in harmony with the policy of the State, which has been uniform and consistent so far as such policy is indicated by legislation in relation to gifts in mortmain, and the powers of corporations to take and hold property. Special trusts were authorized to be created by the acts of 1840, and 1841, in furtherance of the general objects of the institutions named, but such trusts can be created, and full effect given to the acts within the limits imposed by the general laws upon the power of the corporations to acquire and hold property. The general laws of restraint, and those particular acts permitting special trusts, may stand together. When two acts can stand, and the one is not repugnant to the other, the one first enacted will not be regarded as repealed by implication. (*Bowen* v. *Lease*, 5 Hill, 225.) When there is a discrepancy between two statutes, such exposition should be made as that both may stand together. (*McCarter* v. *Orphan Asylum*, 9 Cowen, 437, 506.) There being no express repeal of the general provision of law, or repudiation of the uniform policy of the State, the intent of the legislature to do either cannot be implied. Unlimited trusts of this character might become an unmiti-

gated evil, and no contingent good could compensate for the actual evil attendant upon withdrawing property from general use and placing it in dead hands. Judges have given the widest possible scope to statutes in restraint of the disposal of property in mortmain, and have been astute in their arguments for the application of such statutes to cases as they arose. (Per GIBSON, Ch. J., *Hillyer* v. *Miller*, 10 Penn. R., 326.) The courts ought not to impute an intent to the legislature, not clearly expressed in direct hostility to the traditions and policy of the past. The institute can "take and hold" property within the limits prescribed, but can neither take or hold, in excess of that limit, effect will not be given to a transgressive bequest in excess of the amount authorized. Claiming property and seeking the aid of the courts to reach it, the corporation can rely only on the warrant and authority conferred by law, and cannot claim in transgression or excess of that authority. The statute permits the corporation to take property of a given yearly value, and prohibits the taking in excess of that value. If, as in *Humbert* v. *Trinity Church* (24 W. R., 587), the estate had vested in the corporation when its value did not exceed that allowed by law to be taken, and had subsequently increased in value, a different question would be presented. But here the estate of the testator, not well disposed of by the will, descends to his heirs-at-law and next of kin, and the the question is, who has the better title of the two claimants? Doubtless the restriction upon corporations is a governmental regulation and one of policy, and to be enforced by the government; but an individual, whose interests will be affected by a transgression of the rule, may assert and insist upon the limitation as a restriction upon the power of the corporation to take. There is no practical difficulty in adjusting the amount which the institute can take under the will. The fund bequeathed is in money, and is directed to be invested in bonds and mortgages upon unencumbered farming lands. The rate of interest upon such investments is fixed by law, and the amount to which the corporation is entitled is such

a sum as will yield at seven per cent an amount which, with any income from other property now owned by the legatee, will give a yearly income of $4,000, and this can be ascertained and determined by a referee in the Supreme Court when the record shall be remitted.

The bequests to the Centenary Fund Society and the Chamberlain Institute are within the provisions of chapter 360 of the Laws of 1860, which forbid any person having a husband, wife, child or parent, to devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation in trust or otherwise, more than one-half part of his or her estate after the payment of his or her debts; but makes valid a devise or bequest to the extent of one-half and no more. Both corporations are within the terms employed in the statute and well described by it. They are also within the spirit and intent of the act, the object of which was to prevent a person upon whom others standing in near relation had claims, from disappointing their just expectations and disinheriting them from pious or philanthropic motives, and the intent was to include all public objects, whether religious, charitable or literary, and place them all under the same ban. A testator cannot give to two or more corporations in the aggregate more than one-half his estate. He cannot by disposing of his property to different objects, all within the prohibition, effect a disinheritance of his wife and children, when a gift of the same proportion of his estate to a single object would not be sustained. The prohibition operates upon the testator's capacity to give rather than upon the power of the legatee's to take.

The value of the widow's dower forms no part of the estate of the testator, and in ascertaining the value of the estate for the purpose of estimating the legacies to the corporations for charitable and educational purposes, allowance should be made for it. If the two legacies, when ascertained, shall in the aggregate exceed in amount the one-half part of the estate after the payment of just debts, they must be reduced by pro-

per deductions. If the amount payable to the Chamberlain Institute shall not exceed the one-fourth of the estate, that is, the one-half of that part which may by law be given to charitable institutions, no deductions will be made from it, but the deduction will be made from the bequest to the Centenary Fund Society, to bring the amount within the statutory limit. That is, these reductions must be made from each, so as to bring them within the one-fourth of the estate to which each is entitled.

The right of the widow to claim her dower in the realty, and her distributive share of the personalty, under the statute of distributions and adversely to the will, depends upon the effect to be given to the action brought by her within the year after her husband's death.

The Supreme Court, as a court of equity, has jurisdiction of suits for the recovery of dower, and under a complaint, in proper form and with proper parties, dower may be assigned. (*Badgely* v. *Bruce*, 4 Paige, 98 ; *Mundy* v. *Mundy*, 2 Ves., 122.) But this can only be done upon proper allegations and in an action against the proper parties. It should appear that the husband was at some time seized of an estate of inheritance in the lands particularly specified, and the occupants of the land in which dower is claimed should be parties to the action. (1 R. S., 740, §§ 1, 2 ; Id., 488, §§ 1, 2 ; Id., 304, § 8 ; *Ellicott* v. *Mosher*, 7 N. Y., 201 ; *Stewart* v. *Smith*, 1 Keyes, 60.)

A woman entitled to elect between a devise or other provision by will and her dower, is deemed to have elected to accept the testamentary provision, unless within one year after the death of her husband she shall enter on the lands to be assigned to her for her dower, or commence proceedings for the recovery or assignment thereof. (1 R. S., 741, § 14.) The action must in some way, whatever its form, be an unequivocal assertion of a claim to dower, and a renunciation of the provisions made by the will. The action brought by the widow does not appear to have been for the recovery of dower in any particular lands, or for the assignment of dower generally ; and it does not appear that any of the parties defendants were .

the tenants of the freehold or occupants of any lands in which the widow claims or is entitled to dower. The only defendants were the present plaintiff, the executors of her husband and the corporations and institutions claiming as legatees under the will. The action was proper in form, and perhaps was not defective in parties as an action to set aside the instrument by which she had formally released all claim to every part of the estate of the decedent, and foreclosed herself from claiming any part of the estate not effectually disposed of by the will, and to avoid the charitable bequests, and to assert a claim to share in the distribution of so much of the estate as could not legally go according to the intention of the testator as declared in his will, and which was not heretofore diposed of, in addition to the specific provisions in her behalf made by the will. That this was the scope of the action is very evident from the allegations in the answer in respect to it, as well as from the omission of every claim or averment that the widow did elect or had elected to renounce all benefits under the will, and claim her dower and the distributive share to which she might be entitled in any undisposed of personalty. The action was doubtless brought upon the authority of *Pickering* v. *Stamford* (3 Vesey, 331), to assert her rights as devisee and legatee under the will in lieu of dower, and all claim to so much of the estate as was legally disposed of, and as distributee under the statute, as to so much as was attempted to be, but was not legally and effectually disposed of by the will. It was a safe action to bring, as nothing was given up or risked; but it was not an action for the recovery or assignment of dower, and was not inconsistent with an assertion of right to the lands devised, and the pecuniary and other provisions made for her by the will.

The widow, then, is by law deemed to have elected to take the devise and the pecuniary provision made for her by the will. By accepting this provision, she assents to all the terms and conditions annexed to it, and yields every right inconsistent with such terms and conditions. He, who accepts of a devise or bequest, does so on condition of conforming to the

will, and a court of equity will compel him to perform the condition. (*Glen* v. *Fisher*, 6 J. C. R., 33.) No one is allowed to disappoint a will under which he takes a benefit. (*Blake* v. *Bunbury*, 1 Vesey, Jr., 523.) Every one claiming under an instrument is bound to give full effect to that instrument so far as he can. By accepting a testamentary provision, whether in lieu of a legal right as dower, or as a mere bounty, the devisee or legatee, assents to, and may be made to perform the conditions of the devise or bequest.

It becomes a matter of convention or contract, which may be enforced in equity. (*Isenhart* v. *Brown*, 1 Ed. Ch. R., 411, and cases cited by V. Ch. McCoun.) If a release or discharge of any kind is necessary to carry out the will of the testator and give effect to the conditions annexed to a gift, the donee will be compelled to execute the proper instrument. (*Spofford* v. *Manning*, 6 Paige, 383; *Leonard* v. *Crommelin*, 1 Ed. Ch. R., 306; *Earl of Northumberland* v. *Marquis of Granby*, 1 Eden's Ch. R., 489; S. C., 2 Ambler, 677.) Effect must be given to the will and to all its provisions, according to the intent of the testator as declared by him, and the intent must be gathered from the language employed. The intention of the testator is to be sought after and carried into effect, and such intention is to be collected from the will itself regarding the words as used in their ordinary sense. (*Mann* v. *Mann*, 14 J. R., 9; *Barrus* v. *Kirkland*, 8 Gray, 512.)

The testator in terms imposes the condition upon which his widow shall take the testamentary provision in her favor. The condition is in these words : "If she accepts the provisions here made for her, she shall not be entitled to receive any other share or interest in my estate." The language is very comprehensive, and if there had been no attempt to dispose of any other portion of the estate, and, except as to the widow, the decedent had died intestate, it is not denied that an acceptance of the provision would have excluded the widow from all participation in the estate not disposed of. The words employed are sufficient to exclude the widow's claim to receive any part of the estate not specifically given to her by

the will. The testator in substance declares that his widow shall, if she takes under the will, receive so much and no more, and that the sum shall be in satisfaction of every other claim and demand upon his estate and every part of it.

This condition and limitation was imposed not for the benefit of the other legatees under the will, but as a just limitation to the claims of the widow upon the estate. It is a testamentary declaration that the provision made for the widow was just and reasonable, in view of her age, condition in life and prospective wants, and the amount and value of his estate, and that it ought not to be increased in any contingency. She would not have been compelled to abate from the pecuniary legacy with the other legatees in case there had been a deficiency of assets for the payment of debts and legacies. (*Daverhill* v. *Fletcher*, Ambler, 244.)

In that case effect would be given to the intent of the testator and her contract, at the expense of the other objects of the testator's bounty. In arriving at the intention of the testator, the fact that all the dispositions of his property did not take effect as he had expected, can have no effect. The evidence of his intention, in respect to the valid bequests, is the same and equally persuasive, as if he had foreseen the result and all the consequences of his acts. (2 Jarman on Wills, 743.) If his property had increased or diminished in value between the time of making the will and his death, that circumstance would not affect the construction of the will, whatever might be conjectured as to the probable effect of his altered circumstances upon a will actually made after the change. (1 Redfield on Wills, 430.) The claim of the widow to her distributive share of the estate not effectually disposed of cannot be allowed without making an exception to the condition annexed to the provisions for her which the testator has not made, and essentially modifying and qualifying the terms of the will. Under a condition requiring the devisee and legatee to renounce all claim to any share or interest in the estate other than as given by the will, and without exception express or implied, the court cannot except from the opera-

tion and effect of the condition any part of the estate. (1 Swanston Rep., 405, note.) In Georgia and Rhode Island, wills do not affect after acquired real estate. Hence it might be urged with some plausibility that the conditions annexed to provisions for the wife in lieu of dower and other claims upon the estate were imposed in reference to the estate as it existed at the time of making the will, and for the benefit of the other beneficiaries under the will, and not in respect to additions to the estate not foreseen, or for the benefit of the heirs and next of kin generally. But the courts of those States have held otherwise, and under clauses not essentially different from that under consideration decided that the widow was confined to the provisions for her by the will, if accepted, and was excluded from all share in the after acquired property, as to which the testator died intestate. (*Rains* v. *C.*, 24 Ga., 185; *Chapin* v. *Hill*, 1 R. I., 446.) *Vachell* v. *Breton* (1 Brown's P. C., 167), is in harmony with the cases last cited, and adverse to the claim of the widow here. The testator directed his executors to give to two of his four children ten shillings each and no more, and the testator died intestate as to part of his personal estate. The House of Lords held that the two children were excluded from any share in the undisposed of estate. The cases decided upon the custom of London, where a provision for the wife in lieu of customary share and thirds effectually bars the claim of the wife to the share and thirds by the mere force of the exclusion, may also be cited in support of the principle involved. (*Davila* v. *Davila*, 2 Vern., 724; *Lewin* v. *Lewin*, 3 P. Wms., 15.) *Lett* v. *Randall* (3 Smale & Gifford, 83), is very analogous to the case at bar. The testator, by his will, made pecuniary provision for his wife in lieu of dower and all claims upon his estate. The words of exclusion were more full and ample than those of the Chamberlain will; but of no more force in legal effect, as evidence of intention. Certain gifts for the benefit of children by the same will failed as contrary to the law against perpetuities. The widow's claim was, as here, to share in the distribution of that part of the

estate, which was undisposed of by reason of the failure of the bequests; but the claim was disallowed, and upon principles and for reasons entirely applicable to, and decisive of the widow's claim here. The case of *Pickering* v. *Stamford* (2 Ves., 272) was cited and relied upon in support of the widow's claim; but its authority was not recognized as controlling the decision. That case cannot be sustained upon principle unless the decision is made to rest upon the supposed intention of the testator, and then it resolves itself into a question of interpretation and construction of the will. It has been followed in principle in South Carolina, and widows have been held not excluded from a distributive share in the after acquired real estate of their deceased husbands by a provision in the will in lieu of dower, and the decisions have been placed upon the ground of the intention of the testator. (*Cogdell* v. *Cogdell*, 3 Desau, 346; *Hall* v. *Hall*, 2 McCord's Chy. R., 269.) But these decisions have not passed unquestioned in the same State, and a later case was decided in the same way by a divided court, and the reporter, in a note, argues with force against the correctness of the decisions. (*Seabush* v. *Seabush*, 10 Rich., 495.) There is no controlling authority adverse to the view I entertain, and upon principle I am of the opinion that the widow is by the terms of the will, upon acceptance of the provision made for her, excluded from all share in the residue of the estate, whether disposed of or not; and that, in its distribution, only those other than the widow entitled under the statute of distributions can share. It is not necessary to examine the questions made upon the appeal as to the validity of the release by the widow, as she has elected to take under the will and by such action is barred from all other claim as effectually as by the release, if valid. This disposes of the questions made by the several appeals, and the judgment of the Supreme Court will be modified to conform to these views. As the questions made are important and proper to be made, and the judgment is essentially modified as to all the interests involved, the costs of the several parties may be paid out of the funds in the hands of the executors.

PECKHAM and RAPALLO, JJ., concurred.

CHURCH, Ch. J. concurred; but as to the bequest to the Centenary Fund Society rests his decision on the ground that the corporation has, by its charter and the law under which it was enacted, power to take the bequest, and it may therefore take, as if incorporated with the same powers by the laws of this State.

GROVER concurred except as to the bequest to the Centenary Fund Society, and is of the opinion that the bequest to it is invalid.

FOLGER, J., did not vote.

Judgment modified to conform with opinion.

---

NOTE.—The court on settlement of the decree as finally entered, reconsidered and modified the decision as first pronounced, by holding, that the two institutions named as legatees in the eighteenth clause of the will, were entitled to the entire one-half of the estate, which by law could be given to charitable, benevolent or educational purposes, provided they had, jointly or severally, capacity to take the same. That they were not respectively and severally limited to the one-half of that part of the estate which could be given by will to the purposes named, but that, if one, by reason of its restricted corporate power could not take the full one-half of that part of the estate which could go to educational or charitable pupozes, the other could take to the extent of its corporate capacity, the entire residue of such part of the estate.

If the Chamberlain Institute, by reason of the restrictions imposed by law upon its capacity to take and hold property, shall be incapable to take and hold its one-fourth of the estate of the testator, after the payment of debts, etc., the Centenary Fund Society will be entitled to take to the extent of its capacity the residue of the one-half of the estate effectually bequeathed by the eighteenth clause of the will to those two corporations.

This modification was agreed to by GROVER, PECKHAM, FOLGER, RAPALLO and ANDREWS, JJ. Ch. J. and ALLEN, J., *contra.*