Wetmore v. Parker.

---

EDWARD A. WETMORE et al., Respondents, v. CATHERINE A. PARKER et al., Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1872.)

An invalid trust, under the Revised Statutes, will not be upheld because it is for charitable uses.

But a bequest to a corporation to enable it to carry out all or any of the purposes for which it is created is valid; and this is so although the duration of the trust is unlimited.

In determining whether a legacy to a corporation would increase its property beyond what the law authorizes it to hold, the indebtedness of the corporation for its property is to be deducted from the estimate.

Where there was a bequest of the residuum "to the several persons, corporations and societies to whom I have hereinbefore made bequests, in proportion to the amounts bequeathed to them respectively,"—*Held*, that codicils, revoking certain general legacies for specific objects, did not affect the interests which the legatees took in the residuum by reason of such prior bequests.

Service of citations to probate of a will before the surrogate by a party interested, is legal and valid.

THIS was an appeal by Catherine A. Parker, one of the defendants, from a judgment entered upon the decision of the Special Term.

Wetmore *v*. Parker.

The action was brought to obtain a judicial construction of the will and codicils of Roxana Childs, deceased. The will, among other bequests, contained the following, viz.:

"*Fifth.* I give the sum of $25,000 to the Utica Orphan asylum (now having its buildings on the road from Utica to New Hartford), to be perpetually invested by the trustees or managers thereof in the public stocks of the United States, or of the State of New York, or in bonds and mortgages upon real estate, the fair value of which shall in all cases be at least double the amount secured by the mortgages, exclusive of the value of the buildings; and the interest and income of which sum (and only the interest and income) shall be expended by the trustees or managers, in their discretion, for the support and maintenance of said asylum, having special reference to the suitable and comfortable care of and provision for the orphans in their charge; it being my will, however, that a sufficient portion of the interest and income first derived from said investment be used for procuring, affixing and finishing suitable outside blinds for the windows of the asylum buildings; provided that such blinds shall not have been furnished before this bequest shall take effect.

"*Sixth.* I give the sum of $10,000 to the Reformed Dutch church, in the city of Utica, to be expended in the erection and completion of their church edifice now erecting on the corner of Genesee and Cornelia streets, or in paying any debt which may have been incurred in such erection and completion; and if the whole or any part of said sum shall not be required for that purpose, then it is my will that the said part thereof shall be securely and perpetually invested in bonds and mortgages, and in the public stocks of the United States, or of the State of New York, and the interest and income thereof (and only the interest and income) shall be expended for the use and benefit of said church, and in such manner and for such objects as the trustees, consistory or other persons having charge of the temporalities thereof shall deem best."

The residuary, or seventeenth clause of the will, was in the following words:

" *Seventeenth.* I give and bequeath all the rest and residue of my estate to the several persons, corporations and societies to whom I have hereinbefore made bequests, and who shall be living and existing and able to take the same, in proportion to the amounts given and bequeathed to them respectively; but this is not to apply to the annuity to my sister."

There were also two codicils, viz.:

" *Whereas,* by the eleventh clause of my said will I have devised to the Utica Female Academy the sum of $10,000, as is particularly set forth in said clause; and whereas, I have at this time given to the said academy the sum of three thousand dollars ($3,000) to said academy, intending the same to be part of and to be paid in anticipation of so much of said legacy. Now, therefore, I do hereby revoke the bequest of $3,000, part of the said sum of $10,000, and do hereby bequeath to the said Utica Female academy the sum of $7,000 (instead of $10,000), to be expended by the trustees thereof for the purposes of and in the manner prescribed in and by the said eleventh clause of my said will. Dated at Utica, December the ninth, 1867.

" I having given, by the sixth clause of my said will, the sum of $10,000 to the Reformed Dutch church, in Utica, for the purpose, principally, of aiding in the erection of its church edifice and in paying any debt that might thereby be incurred; and it now appearing probable that said purpose will soon be accomplished, and I having concluded to give at this time the sum of $3,000 towards the extinguishment of the debt incurred as aforesaid, do hereby revoke my said bequest of $10,000 to the said Reformed Dutch church. Dated February 29, 1868."

Issues were tried in the action, and it was found that the will and codicils were duly made and published, and were valid to convey both real and personal estate, and that they were duly proved and admitted to probate before the proper surrogate, and letters testamentary issued thereon to the plaintiffs. That the several corporate bodies entitled by the provisions of the will were duly incor-

porated and had power to receive the several legacies given to them by such will and codicils, and that the revocation of the legacies to Utica Orphan asylum, in part, and to the Reformed Dutch church, of Utica, did not affect the interest of those bodies under the residuary clause, but that they were entitled to receive the provisions made for them in the residuary clause to the same extent as if the codicils had not been made.

Exceptions were duly taken to the findings of the court, and the defendant, Catherine A. Parker, appealed.

*C. E. Tracy*, for the appellant.

*Francis Kernan* and *Adams & Swan*, for the respondent.

Present—MULLIN, P. J.; JOHNSON and TALCOTT, JJ.

MULLIN, P. J. It would not be claimed, if the English laws relating to charitable uses were in force in this State, that the bequests, whose validity is disputed by the appellants, are not valid.

The Court of Appeals held in the case of *Williams* v. *Williams* (4 Seld., 525), that those laws were in force in this State, and therefore a bequest to several persons of money to be applied *to the education of poor children* was valid, on the sole ground that the use was a charitable one.

At the same term in which the case of *Williams* v. *Williams* was decided, the court applied the principles laid down in that case in several other cases, as appears by a note of the reporter at the end of the case.

The case of *Williams* v. *Williams*, so far as it held that the laws relating to charitable uses was in full force in this State, and that a bequest for charitable uses was valid, although a trust valid under the Revised Statutes was not created, nor a trustee appointed, authorized by law to take in perpetuity, was questioned by WRIGHT, J., in *Levy* v. *Levy* (33 N. Y., 97), and was reversed as to those propositions in *Bascom* v. *Albert-*

*son* (34 N. Y., 584), and the correctness of the reversal recognized in several subsequent cases.

The bequests in the will of Mrs. Childs to the Orphan asylum, to the female academy, to the Dutch church and the cemetery association, cannot be sustained merely because they are charitable uses, and it only remains to inquire whether as corporate bodies they are able to take and entitled to hold property given to them for the purposes of their incorporation.

They are each and all of them incorporated either under general laws providing for the creation of corporations of the description to which they severally belong, or by special acts of the legislature.

In *Williams* v. *Williams* there was a bequest to the trustees of the Presbyterian church and congregation in the village of Huntington, and their successors in trust for the support of a minister of said church as now constituted, to be managed in the following manner: The principal to be loaned on good landed security of twice the value of the sum loaned, and one-half the interest annually accruing to be added to the principal, until the fund shall amount to $10,000, the whole interest annually accruing to be annually applied to the support of the gospel minister in said church, as now constituted. No part of the fund was to be applied to building or repairing the church, and any diversion of the fund from the purposes for which it was given was to operate as a forfeiture in favor of his residuary legatees.

This bequest was held valid, but the direction for accumulation was held to be invalid.

DENIO, J., says: At common law a corporation could always take a bequest of such personal property as it could lawfully acquire by any other mode of purchase. Religious corporations, under the general statutes, are authorized to purchase and hold real and personal estate to a limited amount * * * the right to take and hold property clearly extends to such as may be necessary within the specified limit for the purposes of the church, congregation or society.

The learned judge is also of the opinion that a bequest to

a corporation is not rendered invalid when given for a part only of the purposes for which a corporation is created. The conclusion was arrived at by the Chancellor in *The matter of Howe* (1 Paige, 214). The case of *Williams* v. *Williams* must therefore be held to decide that a bequest to a corporation, to enable it to carry out all or any of the purposes for which it was created, is valid.

And also such a bequest is valid, notwithstanding it creates a perpetuity contrary to the provisions of the 1st Revised Statutes, 773, § 1, by which the absolute ownership of personal property is forbidden to be suspended by will for more than two lives in being at the death of the testator.

It is not necessary to repeat the argument by which the proposition is supported. It is enough to say that, as corporations—especially corporations for charitable purposes—are intended to exist for an indefinite time, they must be able to take and hold property in perpetuity, or the object of their creation would be totally defeated.

To this proposition I am not aware of any answer.

In *Bascom* v. *Albertson* (34 N. Y., 584), the case of *Williams* v. *Williams* is approved so far as it declared valid the bequest to the Presbyterian church. PORTER, J., says: We entertain no doubt that the bequest to the Presbyterian church in Huntington was properly upheld. It was a gift to a religious corporation legally authorized to take and hold the fund for purposes within the scope of its charter.

In *Adams* v. *Perry* (43 N. Y., 487–500), the correctness of the decision in the case of Williams, as to the validity of the bequest to the church, is again conceded, and again in *Chamberlain* v. *Chamberlain* (43 N. Y., 424).

The orphan asylum was re-incorporated in 1856, and the charter is to continue in force until repealed by the legislature. The act declares that the sole object of said society shall be the support and education of orphan children. It is authorized to take by gift, grant, devise, bequest or purchase, and hold real and personal estate, for the purposes for which it is incorporated, to an amount not exceeding $150,000.

Under the charter the society may continue forever, and will so continue unless the legislature shall repeal it.

This limitation, if it can be called one, attends all legislative acts which do not operate as contracts ; and, hence, the charter to this corporation is as perpetual in duration as it is possible for the legislature to create.

We have, then, a corporation without limit as to existence authorized to take by gift or bequest to an amount not reached by the bequest under this will.

The bequest is for the support and maintenance of the asylum, and is, therefore, for the very purpose for which the corporation was created.

The bequest is, therefore, to be governed by the same rules as the bequest to the church in the case of Williams.   It is to a corporation without limit to its existence and for the purposes of its creation, and it is expressly authorized to take for such purposes.

Although a perpetuity is created, it is authorized by the same authority that forbids the creation of perpetuities, and is not, therefore, in violation of the provisions of the Revised Statutes prohibiting the creation of such interests.

The objection to the bequest to the female seminary is, that before the legacy vested, the seminary held property to the amount it was authorized by its charter to take and hold ; and, hence, the bequest of Mrs. Childs lapsed, because the legatee was incapable of taking.

This is a question partly of fact and partly of law.   The value of the property owned by the asylum is one of fact, and it is not suggested that the finding of the court on that point is incorrect.

We must assume the value thereof to be $25,000.   To reach this amount the court below deducted from the value of the property of the seminary $15,000 which it owed for the erection of the seminary building, and which sum was secured by a mortgage on its real estate.   This deduction was properly made.

A man who owns a farm worth $10,000, but owes $5,000

of the purchase-money, is worth but $5,000. Whether the debt is secured by a lien on the farm or is in a promissory note, he really is worth so much of the value of the farm as he has paid for. It is true he owns the farm and may be able in law to sell it and pass a valid title to the purchaser, yet, equitably, he is entitled only to so much as the farm brings or is worth, over and above the sum he owes for it.

The legislature could not have intended to require that the debts of a corporation should be included in determining the amount of property it might take and hold under its charter; and as such a mode of computation is unjust it ought not to be applied, unless it is clearly demanded by the language of the charter.

If this view is correct, it renders it unnecessary to inquire whether the seminary is not entitled to take and hold property to an amount larger than $35,000, as it does not hold that amount if the $15,000 of indebtedness are deducted from the value of its property.

By the seventeenth clause of the will the testatrix bequeaths to the several persons, corporations and societies to whom she had, in and by said will, made bequests, who should be living and existing and able to take the same in proportion to the amounts given and bequeathed to them respectively.

By the eleventh clause of the will $10,000 were given to the seminary; and by the sixth clause the same amount was given to the Reformed Dutch church of Utica.

By the first codicil the bequest to the seminary was reduced to $7,000; and by the second codicil the bequest to the church was revoked. Notwithstanding this reduction and revocation, the seminary and church claim to share in the residue, in the proportion to the bequests given by the will, disregarding altogether the codicils.

On the other side it is insisted that the seminary is entitled to share in the residue in the proportion of $7,000, that being the amount to which it is entitled under the will; and that the church is not entitled to any share, because the bequest to it in the will is revoked by the codicil.

The court below was right in holding these corporations entitled to share in the residue of the estate, in proportion to the amounts given them by the will.

Two distinct and independent bequests are given by the will. One gives to each $10,000, the other a share in the residuum of the estate after paying debts and legacies. These bequests are no way connected together, and are to be paid out of different funds.

The residuum is given " *to the several persons, corporations and societies* " to whom I have hereinbefore made bequests, in proportion to the amounts given and bequeathed to them respectively.

In order to ascertain who are to share in the residue, we have only to ascertain to whom bequests had been given by the preceding clauses of the will.

The church and seminary had bequests made to them by the clauses of the will preceding the seventeenth or residuary clause, and are, therefore, entitled to share in the residue.

A codicil does not interfere with any of the specific provisions of the will, unless its language naturally and obviously produce such result, or the terms of the codicil expressly recognize the alteration. (1 Redfield on Wills, 362, note 70, and cases cited.)

This rule has been carried to the extent of enabling two persons to prove a will and codicil, one of whom was named as sole executor in the will and the other sole executor in the codicil. (*Greaves* v. *Price*, 32 Law J., 113 ; 5 J. C. R., 343 ; 1 Jameson on Wills, 160, 166, note 2 ; *Kane* v. *Astor*, 5 Seld., 113 ; *Quincy* v. *Rogers*, 9 Cush., 291.)

Had the two bequests to the church and to the seminary been for the same specific purpose, it might be claimed with some color of plausibility that the revocation of one should be taken as proof of an intention to revoke both ; but the one of $10,000 is for a specific purpose, and the other is without any restriction as to the use to which it may be applied, and is applicable to any of the purposes to which the corporation by its charter may apply its funds.

If the testatrix had given a definite sum to the church and seminary, in the seventeenth clause, instead of a portion of the residuum, could it be fairly claimed that the revocation of one of the bequests was also a revocation of the other? No case can be found, I apprehend, sanctioning any such proposition.

If a revocation would not annul both bequests in the case supposed, why should the revocation of the legacy of $10,000 to the church destroy that of a share in the residuum of the estate, especially where there is no sort of connection between them? Both can stand without doing any violence to the intention of the testatrix, as disclosed in the will.

The appellants' counsel does not furnish us any data by which to determine whether or not the allowance made for counsel is or is not reasonable.

There is nothing in the case to show that they did not earn the sums allowed. The court below was cognizant of the amount of labor performed; we are not, except by the amount of matter appearing in the case. This is not enough to justify us in repudiating the allowance.

If affidavits had been presented to the court, as to the services rendered by counsel, and those affidavits had been incorporated in the case, we would then have been able to have formed an intelligent opinion as to the correctness of the allowance. The allowance is not so exorbitant as to justify us in rejecting it as exorbitant, in the absence of any evidence tending to prove it so to be.

I entertain no doubt but that the surrogate had jurisdiction to admit the will to probate; the service of the citations by persons interested in the will was entirely legal and proper. This mode of service has been too generally followed in this State to permit us to hold it improper or illegal, as to do so would produce a vast amount of litigation and unsettle the title to a large share of the property in it.

The judgment should be affirmed, with costs to be paid by the appellants.

Judgment affirmed.