HANNAH MARIA CAULFIELD, Appellant, *v.* ALGERNON S. SULLIVAN, Public Administrator, etc., Respondent.

One who accepts of a devise or bequest does so on condition of conforming to the will, and he is bound to give full effect as far as he can to its legal dispositions.

Where, therefore, the beneficiary is put to his election between the gift in the will and a claim against the estate, his acceptance of the former is a satisfaction of the latter; and it is immaterial whether what he takes turns out to be of greater or less value than that which he surrendered.

Y., a citizen of this State, died in France leaving real and personal estate both in that country and in the United States. By his will, he appointed plaintiff his universal legatee, leaving to her all his property, real and personal, on condition that "she execute the disposition" thereinafter contained. Following this was a gift to two brothers of the testator of all his property "in America, * * * without exception." By a codicil, the testator confirmed the devises and bequests in the will, and to facilitate the realization of his property in America, appointed one of his brothers executor as to such property. At the time of his death Y. was indebted to plaintiff in the sum of $20,000. Plaintiff took possession of the property in France, stating that she accepted the conditions of the will and took such property in lieu of all claims against the estate; she however presented her claim against the estate without returning or offering to return the property received by her. In a reference under the statute, *held,* that plaintiff was bound to elect whether to retain and

SICKELS — VOL. XL. 20

enforce her claim or to abandon it and accept the provision for her in the will; and having chosen the latter, this was a *satisfaction* of her claim against the estate.

Also *held,* that as the testator was a citizen of this country, temporarily residing in France, his will was to be construed according to our laws.

Upon trial before the referee, defendant produced the records of the surrogate's office in New York, which showed that the will was admitted to probate by the surrogate as to personal estate only, upon production of a duly authenticated copy under the seal of the French court, wherein it was proved. The record contained a copy of the will in French, the language in which it was written, and an English translation. It was claimed that the will was not sufficiently proved, and that the surrogate had no jurisdiction. *Held,* that as the testator was a citizen of this State, having a domicile and property here at the time of his death, the surrogate had jurisdiction to take proof of and to admit the will to probate, and if he admitted it without sufficient proof, or the formalities required by law, it was not judicial action without jurisdiction, but error to be corrected only by application to the surrogate or by appeal from his decree. (Chap. 359, Laws of 1870.)

Also *held,* it being conceded that the codicil was sufficiently proved, that as it distinctly referred to, identified and reaffirmed the will, the will and the codicil together constituted the will of the testator; the provisions of the former could be treated as if embodied in the latter, and both as if executed and published at the same time.

Objection was made that the English copy was no part of the probate. *Held* untenable ; the will being in a foreign language it was the duty of the surrogate to ascertain and put into proper English the meaning; and that the translation was to be treated as part of the surrogate's decree, unassailable collaterally like the rest of it.

*L'Fitt* v. *L'Batt* (1 P. Wms. 527), disapproved.

(Argued March 22, 1881; decided April 19, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, entered upon an order made May 25, 1880, affirming a judgment in favor of defendant, entered upon the report of a referee. (Mem. of decision below, 21 Hun, 227.)

This was a reference under the statute of a disputed claim against the estate of Henry Yelverton, deceased.

The material facts are stated in the opinion.

*George Zabriskie* for appellant. The fact that the recital that the will had been admitted to probate was made upon an

exemplified or authenticated copy of the will without the pro-
duction of the original will, or application to prove the original
will, renders the proceedings void.   (2 R. S.  67, § 63 [4th ed.],
top paging, 253, § 77 ; *In re Diez*, 56 Barb. 591 ; *S. C.*, 50 N.Y.
88.)   The surrogate has no jurisdiction to act upon any thing
but the original will, except where expressly otherwise pro-
vided by statute.   (*Bulkley* v. *Redmond*, 2 Bradf. 286.)   The
exemplification of the will did not include the translation.   (2
Redf. on Wills, 54 ;  *LaFitt* v. *LaBatt*, 1 P. Wms. 526.)   The
record of probate was not conclusive upon the appellant, and
she was entitled to contest its validity in these proceedings, as the
defects specified go to the jurisdiction of the surrogate. (*Fer-
guson* v. *Crawford*, 70 N. Y. 253 ; *Harrington* v. *The Peo-
ple*, 7 Barb. 607.)   The fact that the plaintiff took the estate
and property in France was no bar to other claims against the tes-
tator's estate. (Redfield's Surrogate, 328; 2 Story's Equity Jur.,
§§ 1103, 1104 ; id., §§ 1102, 1119, 1122 ; 2 Redfield on Wills,
185, 186, 192 ; 2 Roper on Legacies, 1027 *et seq. ; Goodfellow*
v. *Burchett*, 2 Vern. 297 ; *Williams* v. *Crary*, 4 Wend. 443 ;
*Eaton* v. *Benton*, 2 Hill, 576 ; *Boughton* v. *Flint*, 74 N. Y.
482 ; *Rickets* v. *Livingston*, 2 Johns. Cas. 97 ; *Mulherean's
Executors* v. *Gillespie*, 12 Wend. 349 ; 2 Story's Eq. 1075-6–
8, 1092-3 ; 2 Jarman on Wills [5th Am. ed.], 1.)   There was
no competent evidence to show that the plaintiff ever accepted
the legacies so as to preclude her from recovering her claim
against the estate, or that such claim was in any way impaired.
(2 Story's Equity Jur., §§ 1097, 1098 ; 2 Redf. on Wills, 362.)

*Charles W. Gould* for respondent.   The will and codicil of
Henry Yelverton having been duly admitted to probate by the
surrogate in New York, the record was properly introduced in
evidence and cannot be impeached collaterally.  (*Vanderpoel*
v. *Van Valkenburg*, 6 N. Y. 198 ; *In re, etc., of Kellum*, 50
id. 298 ; *Muir* v. *Trustees of Leake, etc.*, 3 Barb. Ch. 481 ;
*Farley* v. *McConnell*, 7 Lans. 428 ; *Carroll* v. *Carroll*, 60 N.
Y. 123 ; *Booth* v. *Kitchen*, 7 Hun, 255 ; *Bailey* v. *Hilton*, 14
id. 7.)   The statements of a universal legatee actually engaged

in reducing the property to possession are admissible. (*Adams* v. *Davidson*, 10 N. Y. 309; *Tilson* v. *Terwilliger*, 56 id. 276.) Plaintiff, having elected to take the property in France, will not be permitted to change her mind and defeat the intent of the will. (*Leonard* v. *Crommelin*, 1 Edw. Ch. 210; *Chamberlain* v. *Chamberlain*, 43 N. Y. 442; *Spofford* v. *Manning*, 6 Paige's Ch. 388.) Claimant, the universal legatee of real and personal property, must see that the property in America is paid over to the specified legatees in accordance with the will's provisions, "without exception," and even at personal loss. (*Brown* v. *Knapp*, 79 N. Y. 143.) The claimant failed to make out a *prima facie* case. (1 Phil. on Ev. [Cow. & Hill] 602; 1 Starkie on Ev. 34; *Brooks* v. *Steen*, 6 Hun, 516; *Rockwell* v. *Merwin*, 1 Sweeney, 484.) The assignment of a mortgage and its satisfaction by the assignor do not raise a presumption of debt. (*Kellogg* v. *Smith*, 26 N. Y. 20; *Merritt* v. *Bartholick*, 36 id. 44; *Strause* v. *Josepthal*, 77 id. 622; *Foster* v. *Beals*, 21 id. 252.)

EARL, J. Henry Yelverton, a citizen of this State, died in France, where he had resided for several years, on the 30th of September, 1873, leaving at his death a will executed in Paris on the prior 20th day of September, and a codicil thereto, executed three days thereafter. The will and codicil were subsequently admitted to probate in the Surrogate's Court of the county of New York. Letters of administration with the will annexed were subsequently issued to the defendant Sullivan. The plaintiff had resided with the testator in France, and subsequently to his death, in 1875, she presented two claims against his estate, amounting to over $20,000. Such claims were by consent, by an order of the Special Term made in February, 1879, referred to a referee. The case was brought to trial before the referee, and in June, 1879, he made his report in which he found that on or about the 1st day of January, 1867, the testator borrowed from the plaintiff $12,500, which he agreed to repay on demand with interest at the rate of seven per cent, and that on the 20th of October,

1868, in consideration of $9,000 paid to him by plaintiff, he assigned to her a mortgage upon real estate; that the assignment was not put upon record, and that subsequently the testator acknowledged satisfaction of the mortgage and that thereby the mortgage was satisfied of record; and the referee found and decided that after the death of the testator the plaintiff took possession of all the testator's estate in France, consisting of papers, chattels, real estate and fixtures, and accepted the conditions of the testator's will, and took his property in France subject to such conditions and in lieu of all claims against his estate; and he ordered judgment in favor of defendant.

We are of opinion that the case was properly disposed of. The testator in his will provided as follows : " I appoint Miss Hannah Maria Caulfield, living with me, to be my universal legatee, consequently I leave to her the whole of the real and personal property which shall belong to me on the day of my decease, and which shall compose my succession, on condition that she execute the disposition hereinafter contained, and any others which I may make hereafter.    I bequeath to my two brothers, *first,* Mr. Robert Yelverton of New York, *second,* and Mr. Charles Yelverton of San Francisco, to be divided between them in moieties, all the real and personal estate which shall belong to me, in America, on the day of my decease without exception." In the codicil, after referring particularly to the will, it is stated as follows : " Whereas, by my said will, I have devised and bequeathed all my property, situated on the continent of America, to my brothers Robert and Charles equally, now it is my will and I do hereby confirm the said devise and bequest, and in order to facilitate the realization of my property, situated on the continent of America, I do hereby appoint my said brother Robert executor as to such property, and except as aforesaid I do hereby expressly ratify and confirm my said last will and testament."

The testator left real and personal property, both in France and the United States.  After the death of the testator, Miss Caulfield took possession of the property left by the testator, in France, and soon thereafter she declared to Mrs. Yelverton,

the wife of Robert Yelverton, who was sworn as a witness before the referee, that " she accepted the conditions of the will of Henry Yelverton, and that she took his property in France in lieu of all claims against his estate." It does not appear how much property the testator left in France, or what became of it, except as above stated.

Under such circumstances, the provision made for her in the will, and her acceptance thereof, must be deemed a satisfaction of her claim against the estate. It is manifest that it was the intention of the testator that his brothers should receive all his American property, for the exact language of the will is, that they should receive it "without exception;" and it is upon the condition that they should so receive it, and that she would execute that portion of the will, that she was made the universal legatee of all his other property. It was in the contemplation of the testator that she would either surrender her claims against the estate or obtain satisfaction of them out of his property in France, and it would defeat his manifest intention if the property given to his brothers was to be diminished by the amount of her claims, for then they would not receive it "without exception." It is clearly inferable that the testator, leaving considerable property in France, did not intend that she should cross the Atlantic and enforce her claims against the property given to his brothers; and this inference is somewhat strengthened by the fact that in his codicil he appointed his brother Robert executor as to his American property, leaving her as universal legatee to execute his will as to the property in France. She could not enforce her claims against the American property, and, at the same time, see to it that that portion of the will which gave such property to his brothers was executed.

This, therefore, was a case where she was bound to elect whether she would retain her claims and enforce them against the testator's property, or abandon them and take the property given to her. She could not take a benefit under this will and refuse the burden it imposed upon her. The effect of the will is the same as if the testator had given his American property

to his brothers and then given the other property to her, on condition that she would release her claims against the estate. By accepting the provision made for her, she assented to all the terms and conditions annexed to it, and yielded every right inconsistent with such terms and conditions. One who accepts of a devise or bequest does so on condition of conforming to the will. No one is allowed to disappoint a will under which he takes a benefit, and every one claiming under a will is bound to give full effect to the legal dispositions thereof so far as he can (*Chamberlain* v. *Chamberlain*, 43 N. Y. 424–442), and where one is thus put to his election under a will it matters not that what he takes turns out to be greater or less in value than that which he surrenders. (*Brown* v. *Knapp*, 79 N. Y. 136–143.)

As the testator was a citizen of this country, claiming his domicile here, but temporarily residing in France, his will must, in our courts, be construed according to our laws, and hence the rules of construction above referred to are applicable. If Miss Caulfield had made her election under such circumstances that she could have revoked it, it does not appear that she ever did revoke it, or that she ever surrendered, or offered to surrender, any of the property which she took in France. The testator died, and her election was made in 1873; her claim against the estate was formally made in 1875; and her case was tried in 1879; and there is nothing showing that she did not have the full benefit of the property of which she took possession in France. There was, therefore, no error in holding that she was bound by her election.

It is claimed, however, that the will was not sufficiently proved. Upon the trial before the referee the defendant produced the records of the surrogate's office in New York, which showed that the will was admitted to probate as to personal estate only upon the production to the surrogate of a duly authenticated copy from under the seal of the court in which the same was proved; and that the codicil was proved by the evidence of witnesses taken upon commission; and the record contained a copy of the will in French, the language in which

the will was originally written, and an English translation thereof, and a copy of the codicil, which was originally written in English, together with the evidence given to prove the execution of the codicil.

It is not disputed that the execution of the codicil was sufficiently proved. The claim is that the will was not sufficiently proved and that the surrogate did not acquire jurisdiction to prove it. There are two answers to this claim : *First.* The testator was a citizen of this country having a domicile at the time of his death in the city of New York, and he left property there. The surrogate, therefore, had jurisdiction to take proof of his will, and to admit it to probate no matter where it was made, or where he died. If he admitted it to probate without sufficient proof, or without the proof or the formalities which the law requires, it was a mere error in the exercise of his jurisdiction and not judicial action without jurisdiction, and such error could be corrected only by application to the Surrogate's Court or appeal from its decree.

It is provided in section 1 of the act Chapter 359 of the Laws of 1870, that " the surrogate of the county of New York shall have power and jurisdiction to issue all lawful process, upon allegations duly verified, and to make and enter all lawful orders and decrees in proceedings in the Surrogate's Court of said county, and the objection of want of jurisdiction shall not be taken to said orders and decrees except by appeal in the manner prescribed by statute, or in a proceeding before the surrogate to set aside, open or modify the same, and the surrogate shall have the same power to set aside, open, vacate or modify the orders or decrees of the said court as is exercised by courts of record of general jurisdiction." This law is a sufficient answer to this collateral attack upon the probate of the will, without reference to decisions leading to the same result to which our attention has been called. (*Bearns* v. *Gould*, 77 N. Y. 455.)

*Second.* The codicil distinctly referred to and identified the will and reaffirmed the same, and hence the will and the codicil together constituted the will of the testator ; the provisions of

the former may be treated as embodied in the latter, and both may be treated as if executed and published at the same time. (*Brown* v. *Clark*, 77 N. Y. 369.)

Objection was made that the English copy of the will contained in the record was no part of the probate. We think it was. It appears in 2 Redfield on Wills (2d ed.), p. 45, that "it is requisite, where the will is in a foreign language, that the probate should contain a translation of the same into English," and such plainly must be the law. Suppose a will be executed in Latin, Greek or Arabic, with the formalities required by our statute, what is to be done with it when it is presented for probate? Its execution must be proved in English. The precise language in which the will is written is of little significance; whether it be in our language or another is of no importance. The will of the testator is to be ascertained from the meaning which he has expressed, in whatever language; and that meaning, put into proper English, must, in a court required to use the English language, be taken as the testator's will and placed upon record. There can be no necessity for recording it in the foreign language; and yet the practice of recording in both languages, where that can be done, is quite proper. It was the duty of the surrogate, in this case, to ascertain what the will of the testator, written in a foreign tongue, was; and the translation which he has recorded must be treated as part of his decree, unassailable collaterally, like the rest of it.

Our attention has been called by the learned counsel for the appellant to the case of *D'Fitt* v. *D'Batt* (1 P. Wms. 527). In that case there was a French will, the original whereof was proved in French, and under it, in the same probate, the will was translated into English, but it appeared to be falsely translated. It was objected that the translation, being part of the probate, and allowed in the spiritual court, must bind, and that the application must be to the spiritual court to correct the mistakes in the translation, which, until then, must be conclusive. The master of the rolls said that "nothing but the original is part of the probate, neither hath the spiritual court power to make any translation; and supposing the original will

was in *Latin* (as was formerly very usual), and there should happen to be a plain mistake in the translation of the *Latin* into English, surely the court might determine according to what the translation ought to be, and so it was done in this case." That case is meagerly reported, and it does not appear by what rules or usages the spiritual courts were governed in admitting to probate wills written in a foreign tongue; but so far as that case holds that a will written in a foreign language must be admitted to probate and recorded in the foreign language only, it is without reason, certainly as applied to the state of things existing in this country. But the authority of that case would seem to authorize any court before which the question was raised to determine whether the translation was correct or not. We have examined this translation, and have no reason to doubt that it is correct; and that it was correct was not even disputed on the trial before the referee.

We have, therefore, reached the conclusion that the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.