## BISHOP *v.* HENDRICK.

*(Supreme Court, General Term, Third Department.* December 28, 1891.)

1. DEED—COMPETENCY OF GRANTOR—EVIDENCE.

After a will, executed by the testatrix on the evening before her death, giving most of her estate to defendant, had been rejected by the surrogate on the ground of mental incompetency of the deceased, defendant claimed the entire estate under a deed then first produced, purporting to have been executed by the deceased more than four months before the will, which defendant alleged was delivered to her by the deceased on the morning of the day on which she executed the will. The deceased was 69 years of age, and very feeble, and it appeared that her condition at the time of the alleged delivery of the deed was nearly the same as at the time of the execution of the will. *Held,* that a finding that deceased was at that time incompetent to make the alleged gift should be sustained.

2. ESTOPPEL—GRANTEE IN DEED OF GIFT—CLAIMING UNDER WILL.

The facts that defendant, having in her possession the deed conveying to her all the property included in the will, did not disclose the deed, but assumed the custody of the property under the will, and employed counsel to maintain it, although very strong evidence to contradict her claim that the deed was so delivered to her, did not absolutely estop her from claiming the property under the deed.

Appeal from judgment on report of referee.

Action by Richard Bishop, administrator of Clara B. Hopkins, deceased, against Helen E. Hendrick. Judgment for plaintiff. Defendant appeals. Affirmed.

Argued before LEARNED, P. J., and MAYHAM and KELLOGG, JJ.

*Louis Hasbrouck, (Daniel Magone* and *Thomas Spratt,* of counsel,) for appellant. *John C. Keeler, (Leslie W. Russell,* of counsel,) for respondent.

LEARNED, P. J. This is an appeal from a judgment on report of a referee. The action was brought to recover certain personal property in defendant's possession, consisting of notes, mortgages, and furniture, and other property, which formerly belonged to Clara B. Hopkins, now deceased, plaintiff's intestate. The defendant claims this property by alleged gift from said Clara, and the validity of such alleged gift is the question in dispute. On Wednesday, the 25th day of March, 1885, in the evening, said Clara signed with her mark a paper purporting to be her will. She died the next day about noon. In March, 1886, it was decided by the surrogate that the deceased was not, at the time of making the aforesaid instrument, competent to make a will, and

plaintiff was appointed administrator. The alleged will, thus held to be invalid, gave to defendant the house and lot in which deceased lived, with all the household furniture, pictures, keepsakes, and ornaments. It gave several other bequests and devises, and then the residue to deceased's lawful heirs and next of kin. The defendant appeared by counsel on the hearing before the surrogate in support of the alleged will. The claim of the defendant now made is upon a deed dated November 8, 1884, alleged to have been executed by said Clara to defendant, conveying the homestead in Richville, and also a lot of 10 acres in Richville, "and all and singular my goods, chattels, and personal estate of every name and nature and demand whatsoever thereunto belonging to the said Clara B. Hopkins at and immediately before the time of her decease." The consideration expressed is $1,000 and other good causes. The paper is signed and sealed, not witnessed or acknowledged. This alleged instrument seems to have remained in the possession of the deceased, not delivered, until the morning of March 25, 1885, the day on which the deceased executed the aforesaid invalid instrument purporting to be her will. On that morning there is some evidence by a son of defendant that the deceased took a folded paper, and delivered it to the defendant, and said, "And the house and what there is here, and here is your title," passing the papers to her. The same witness testifies that at the same time the deceased delivered to his mother a box of securities. The deceased was buried the following Sunday. The next day the alleged will aforesaid was read at deceased's house by Louis A. Scott, named therein as executor, in the presence of the relatives, among them the defendant. He told defendant to take care of everything the best she could; that he would have the will admitted to probate as soon as he could. She said to the persons there that she wanted the will read, as they might think it strange that she stayed there; that is, at the house. Some one answered that was all right, as she could do so better than any others of them. The defendant made no objection to the will, and subsequently took an active part in supporting the alleged will by her counsel. She did not then assert the title under the alleged deed. After the decision adverse to the will, and in March, 1886, she notified the Gouveneur Bank that she claimed money on deposit pursuant to a gift to her by deceased. She also notified Scott that by gift from deceased she was the owner of certain Texas securities. In neither of these notices did she state any particulars as to such alleged gift. When this present action was commenced, she averred in her answer that the deceased, prior to her death, gave the defendant all of the personal property demanded, without alleging time or place or mode of gift. On the trial in 1890 this alleged deed appears to have been produced for the first time.

The learned referee found as a fact that at the time of the attempted gift on the 25th of March the deceased was incompetent to make such a gift, and not capable of understanding, finding, or controlling her mind. The appellant insists that this finding is erroneous. Now, it has been decided on a hearing of all parties that at the time of executing the alleged will, which was on the evening of the same day, she was incompetent to make her will. She was then in fact too weak even to sign her name. Of course, it is possible that one who was incompetent to make a will in the evening might have been competent at 9 or 11 o'clock in the morning. This would evidently be true if a sudden attack of illness had seized a person in the afternoon who had previously been in vigorous health. But Mrs. Hopkins was a feeble old woman of about 69. She was in bed and not dressed that morning; said that she was feeling much worse, and was afraid she was not going to get up again; that she would not be there to sit by the window and see the view any longer; and she asked a son of defendant to attend to the digging of her grave. This was the first time he had seen her in bed. So that the weakness under which she was suffering in the evening

had at least commenced at the time of the alleged gift. The defendant refers to certain acts of the deceased done during the day, and some remarks of hers as to her funeral, etc., which the defendant thinks show sufficient mental capacity to validate the alleged gift. The act was the requesting one Bosworth to buy a silk handkerchief for each of four boys, who were going away from the village. But these remarks as to her funeral and these trivial presents do not go far to show capacity to deliver a deed of all her property, for we must bear in mind that the deceased for four months—while, so far as appears, she was well and strong, and had her mental powers—had kept this deed without delivering it; and it is only when she is feeble, and expecting to die, that she is said to have handed it to defendant. Furthermore, a few hours afterwards she goes through the form of executing a will, when, if the deed was valid, she had nothing to devise or bequeath. She even devises specifically to one Ada Walker the 10 acres specifically conveyed to defendant by the deed. We are, then, satisfied that, with the decision as to the will standing unreversed, the referee correctly held as a matter of fact upon the proof that the deceased was incompetent to make a gift at the time alleged. We have no reason, on an examination of all the evidence in this case, to hold otherwise on this question of fact. We recognize, of course, the better opportunity which the referee had for deciding such a question on hearing the testimony of witnesses in open court.

This practically decides the case. But there are some other points which should be considered. The plaintiff urges with great force that by the conduct of the defendant in appearing as legatee and devisee under the will in support thereof upon the proceedings for probate before the surrogate, without asserting her alleged claim as donee by the deed, the defendant elected to take under the will, and could not thereafter (when the will had been declared void) assert a claim under the deed. *Caulfield* v. *Sullivan*, 85 N. Y. 158; *Chamberlain* v. *Chamberlain*, 43 N. Y. 424, 443. As it is sometimes stated with rather peculiar language: "No one is allowed to disappoint a will under which he takes a benefit." We are not willing to say that, as an absolute estoppel, the defendant was bound by these acts. She never accepted anything under the will. She urged before the surrogate that the deceased was competent to make the will. That position was in harmony with the claim that deceased was competent to deliver the deed. The question before the surrogate was not whether the deceased had much or little or no property. It was only as to her competency. A person claiming that a deceased has given him certain property cannot be thereby prevented from establishing the competency of the deceased to make a will by the peril of forfeiting the property claimed through the gift. It is true that in the present case the alleged gift embraced the whole of deceased's property, and therefore left nothing for testamentary disposition. Still we think that, if the defendant preferred to permit the more equitable distribution of property made by the will, if that should be found valid, she was not absolutely estopped afterwards from asserting her claim by gift. If the will were proved, letters testamentary would issue; if not, then letters of administration. In either case she could contest with the personal representative and the devisee or heir her right to the real or personal property. If she had produced the deed of gift on the hearing, that would not have affected the question then in issue, except that it might have discredited the capacity of the deceased. And that the defendant did not desire to do, in any view of the matter. But, while we cannot hold that she was absolutely estopped, on the other hand we think that her silence and concealment of her alleged rights are very strong evidence against her. If she believed, from the time of the alleged delivery of the deed, that she was the owner of all the property of the deceased, it is hardly to be thought that she would have accepted from the executor the custody for him of the personal property in the house; or

that she would never have notified the legatees and devisees and executors of the uselessness of their contest over the will; or that, on the decision of the surrogate, she would have neglected to produce the paper under which she now claims. This view becomes stronger when we consider that this alleged gift was, in its effect, a testamentary disposition. The alleged delivery was in view of the near death of the deceased; and, as to the personal property at least, it purported to give what the deceased should have "at and immediately before the time of her decease." Therefore the defendant was the more required to assert her rights as soon as possible. We consider, therefore, the conduct of the defendant in these respects as tending very strongly to contradict the claim that this deed and the box of securities were delivered to her as testified by her son. A transaction of this kind, so important, alleged to have taken place at the bedside of an old woman, in the near approach of death, in the presence only of interested relatives, needs strong evidence for its support. The statute places special safeguards around the execution of a will. And a transaction which is practically testamentary should be carefully scrutinized by the courts. *Kenney* v. *Public Admr.*, 2 Bradf. Sur. 320; *Delmotte* v. *Taylor*, 1 Redf. Sur. 417.

It may not be very important to refer to the preparation of this deed of gift, except as it may tend to throw light on the question whether, when delivered, it was the valid act of the deceased. We refer to it briefly. Mrs. Blanchard, a sister of defendant's husband, residing in East Hampton, Mass., visited at Richville in November, 1884. She testifies that she then made a call on deceased; that deceased asked her to do some writing for her, and procured pen, ink, and paper. The witness says that the deceased dictated from a paper in her hand, and that she wrote at her dictation; that deceased attached her seal, and signed her name. Until this visit to Richville the witness had not seen deceased for 11 years. The witness did not mention this to any one until some one of the defendant's family wrote after deceased's death to inquire if the witness had ever done any writing for her. Without adverting to the cross-examination of this witness, it is enough to say that, if she gives the correct account of the preparation of this deed, it is evident that the deceased took no advice from those whom she was accustomed to consult; also that the fluent use of technical legal phrases is remarkable.

A question has been made whether there was such a delivery of the personal property (which is what is now in question) as to make a valid gift. We consider it unnecessary to decide that point, in the view we have already expressed. These views also render it unnecessary to consider certain objections to evidence made by the defense. Judgment affirmed, with costs.

All concur.