In the Matter of the Estate of WILLIAM O. STRONG, Deceased.

*(Surrogate's Court, Chautauqua County, Filed November 6, 1893.)*

EXECUTORS AND ADMINISTRATORS—PERSONAL CLAIM—ESTOPPEL.

By the third clause of his will the testator bequeathed to the claim-ant, Abram H. Johnson, one of his executors, certain farming tools and other personal property of the value of about sixty-five dollars, with the following provision: "The foregoing bequests to be in full com-pensation for any and all care said Johnson may render me in my old age." After the will was probated and said Johnson qualified as such executor, he accepted and received all the property so bequeathed to him, as appears by the inventory and account verified and filed, and other evidence. *Held,* that such claimant is estopped from making claim for care and services rendered to testator in sickness in his old age.

Judicial settlement of executor's accounts.

S. P. Fox, for claimant; Towne & Record, for Albert J. Homan and other contestants; A. W. Hull, special guardian, for minors, contestants.

SHERMAN, S.—The testator died January 26, 1892, of the age of over eighty-two years. His wife died May 14, 1881. Decedent left him surviving the following heirs and legatees: Celestia May Johnson, granddaughter, minor, an only child and heir of Abram H. Johnson, said executor; Jenny Pattyson, full age; Emma Osborn, full age; Henry Homan, full age; Edgar Homan and Albert Homan, both minors. All the above named are legatees, and the last five named are grandchildren of the testator and children of Albert J. Homan, one of the executors, and a son-in-law of the testator.

The testator by the first clause of his will directed that all his funeral expenses and just debts be first paid. The will was dated December 16, 1890, and probated June 7, 1892.

By the second clause of his will he bequeathed to his grand-daughter, Celestia May Johnson, only child of said Abram H.

Johnson, executor and claimant, his parlor stove, parlor chairs and center table.

By the third clause of his will he bequeathed to his said son-in-law, the claimant, his bay mare, called Fannie, his lumber wagon, cook stove and his one-half interest in his heavy double harness, plow, cultivator, harrow, berry crates and baskets, the other half interest being owned by said Abram H. Johnson. The value of the testator's interest in said property, as appraised, being about sixty-five dollars. Immediately following the description of said property, and in the same clause, the will reads as follows: "The foregoing bequests to be in full compensation for any and all care said Johnson may render me in my old age."

By the fourth clause of his will the testator bequeathed all the rest of his household goods, one-half to his said granddaughter, Celestia May Johnson, daughter of said Abram H. Johnson, claimant, and the other half to his five grandchildren above named, children of the said other executor, Albert J. Homan, share and share alike.

By the fifth clause of his will he bequeathed his gold-headed cane to his said son-in-law, Albert J. Homan, executor.

By the sixth clause of his will he appointed his two sons-in-law, Abram H. Johnson and Albert J. Homan, the executors of his will, and authorized and directed them to sell all the residue and remainder of his real and personal property, and to divide the proceeds thereof between his said six grandchildren, viz.: Celestia May Johnson, Jennie Pattyson, Emma Osborn, Henry Homan, Edgar Homan and Albert Homan, share and share alike, and in pursuance thereof the said executors sold the real estate owned by the testator at his death, consisting of an improved farm, with farm buildings thereon, and containing 35 acres, for $3,125, and delivered to the several legatees named in his will the personal property bequeathed to them respectively and sold the remainder of such personal property as directed by the will. He directed that his executors should not charge any commissions for administering his estate, and they have not

done so in their account as rendered and filed. He directed that the expenses of administering the estate should be paid out of it.

The testator owed no debts at his death exceeding twenty-five dollars, and his personal property was appraised at $849.95, as appears by said account filed March 26, 1893, so made and verified by both executors, and is admitted by all parties interested to be correct, and shows a balance of $3,205.87 in money for distribution to the legatees as provided by said will, less the expenses of the executors in administering the estate.

On the hearing herein for the settlement of said account and for distribution of said funds to the legatees as directed by the will, said Abram H. Johnson, co-executor, presented his personal claim against the estate, amounting to $1,748.

The testator at his death owned an improved farm with dwelling house and barn and other farm buildings thereon, which the executors have sold as above stated, for $3,125. The claimant owned a farm of fifteen acres adjoining, with no buildings thereon, used for pasture, meadow and cultivation, of the value of less than one-half of the thirty-five acres owned by the testator.

On the hearing herein no witnesses were sworn on the part of the contestants, except Albert J. Homan, who testified that all the personal property bequeathed to his co-executor, Abram H. Johnson, had been accepted and received by him.

It appeared from the evidence, and was not contradicted, that the testator and his son-in-law, Abram H. Johnson, had worked the two farms and used the same and the products thereof in common, and divided the net avails thereof, after paying for hired help on the farms and in dwelling house, share and share alike, up to the time of the death of the testator, a period of over twenty-five years; that during said time Johnson and his family had lived in the dwelling house and with the family of the testator, all eating at the same table, and that no account was made at the time between them for the board and support of them or of their respective families, nor for pay to their hired help on the farms or in such dwelling house. Evidence of this is con-

firmed by the account and inventory made and verified by both executors and filed.

On the hearing herein the claimant withdrew all his claims as stated in his personal account arising before six years preceding the testator's death, January 26, 1892. These claims so withdrawn covered a portion of the claim of $624 for helping to attend to the comforts and care of the decedent from November 1, 1885, to November 1, 1891, covering 312 weeks at two dollars per week.

The several claims of the claimant for building a hog pen and three additions to house and furnishing lumber for same, and for helping build barn and furnishing one-half the lumber and shingles, arose over six years before the death of the testator, amounting to $520; and a portion of them from fifteen to twenty-five years before his death. The same is true for setting out pear and peach trees. In addition to the above the claimant demanded $144 for services in care of decedent during six years prior to his death, and three hundred dollars for care and services in his last sickness.

The contestants duly objected to all such claims in their verified written answer, and alleged that same were unjust, and that same were outlawed except those arising during six years preceding his death.

The testator was confined to his bed by sickness during about two months preceding his death and was sick on an average about one month in a year, during about five years before he died. Mr. Johnson assisted in taking care of the testator when sick and took the principal care of him in his last sickness.

Alice Morrison worked there in the house as a domestic in his last sickness and has been paid out of the estate for her services $16.50, as appears by the evidence and by schedule "D" as verified by the executors and filed.

The respective families of the claimant and testator consisted of the testator and his wife, who died May 14, 1881, and who assisted in doing housework for the two families until about the time of her death. The family of the claimant consisted of his

wife, who died June 1, 1890, and was sick during the last year of her life and unable to do any work, and the adopted daughter of the claimant, Cora Donnahue, who went into these two families to live when she was less than a year old and was supported, educated and clothed by the claimant and the testator until about November 20, 1891, she being then about twenty years old; she made no charge for her services, and nothing was paid to her therefor, except in her support. The two families lived together as one family.

All the net products of the two farms after paying expenses of conducting same, including hired help, medical attendance and burial expenses for the two members thereof who died as above stated, were equally divided between the claimant and the testator up to the time of his death, January 25, 1892, except for medical care and attendance upon him, which has since been paid out of his estate. No claim was made that the testator did not do his share of the work on the two farms during twenty-six years preceding his death, excepting the last five years of that time he was sick on an average of about one month in each year and unable to work, but otherwise assisted in the work and management of the business.

The witness, Alice Morrison, niece of the claimant, testified to a conversation with her father at his residence in 1891 in which the testator said that Mr. Johnson should have his pay for what he had done there, and that May, meaning the daughter of the claimant, should have half of the property. Abbie Johnson, the sister of the claimant, and who was present at the same conversation, testified to same conversation substantially as did the witness Alice Morrison; this conversation was a few months after the testator made his will. Alice Morrison also testified that she was present at one time during the last sickness of the testator and heard him say that May should have half of the property, and that Mr. Johnson should have his pay; nothing further.

Abbie Johnson, sister of the claimant, testifying to the same conversation as Alice Morrison above, swore that the testator

said: "Oh, May shall have half!" But the witness did not say anything about the claimant having any part of the property, or any pay for his services.

The testator, after bequeathing, as above stated, to his grand-daughter, Celestia May Johnson, his parlor stove, parlor chairs and parlor center table, bequeathed to the claimant the articles mentioned in the third clause of the will and of the value of about sixty-five dollars, as stated by him, *"to be in full compensation for any and all care said Johnson may render me in my old age."* And then he further bequeathed one-half of all the rest of his household goods, not before disposed of, to the daughter of the claimant, Celestia May Johnson, and the other half to his five grandchildren, being the sons and daughters of his other son-in-law, Albert J. Homan, co-executor, share and share share alike, and after giving his gold-headed cane to Albert J. Homan, his son-in-law, he, by the sixth clause of his will, bequeathed and devised all the rest of his real and personal property to his six grandchildren, above-named, share and share alike and directed his executors to sell the remainder of his real and personal estate, which they have since done, and make distribution accordingly, which they have not yet done.

The testator thus disposed of his entire property by his will.

This appears to have been a just, equitable and sensible disposition of the testator's estate, and the claimant having accepted its provisions, as appears in his unverified account and inventory, and by the uncontradicted evidence of his co-executor, Albert J. Homan, I am of the opinion that he is in law estopped from recovering any part of his personal claim herein; he having accepted the property bequeathed to him upon the conditions named with full knowledge thereof, such act must be regarded as an accord and satisfaction of his claim. To allow any part of it would be unjust to the other legatees.

The claimant has not returned, or offered to return, the personal property bequeathed to him under the third clause of the will, and it must be held that he has accepted the bequest under the conditions named; and this without regard to the value of

the property so bequeathed to and received by him. Caulfield v. Sullivan, 85 N. Y. 153. Chamberlain v. Chamberlain, 43 id., 424, 442-3.

I direct decree disallowing the personal claim of Abram .H. Johnson, with seventy dollars costs against him personally; and also confirming the account of the executors filed March 26, 1893, with costs and expenses on accounting payable out of the estate, to be taxed and adjusted, and inserted in decree on final accounting and distribution to legatees, together with twenty dollars costs allowed to A. W. Hull as special guardian for minors in proceedings on said personal claim, payable out of the estate.