(7 Misc. Rep. 334.)

### SANFORD v. GOODELL et al.

(Supreme Court, Special Term, St. Lawrence County. February, 1894.)

1. WILLS—SUSPENDING POWER OF ALIENATION.
    A devise to three persons "as long as they or the survivor or survivors of them shall live," remainder, after their death, to E., suspends the power of alienation for a longer period than two lives, and is therefore void.

2. SAME—WILL VOID IN PART.
    Testator devised a parcel of land, equal to about one-fourth of his entire estate, to one of his four children for life, remainder to her heirs. The balance of his estate he devised to his other three children for life, remainder to one E. *Held,* that the object of the will was to give each child the use of one-fourth of the estate for life, and, the devise to the three being void under the statute against perpetuities, the entire will failed.

8. SAME—RIGHTS OF DEVISEES—ELECTION.
    Where the apparent object of a will is to make an equal division among testator's children, and the devise to one is valid, but the devise to the others violates the statute against perpetuities, the first devisee is precluded, by the doctrine of election, from claiming her devise, and also a share, under the intestate laws, of the portion of the estate as to which the will failed.

Action by Martha L. Sanford against Amelia B. Goodell and others for partition. Judgment for defendants.

Charles A. Kellogg, for plaintiff.
Charles O. Tappan, E. L. Strong, and George B. Stacy, for defendants.

RUSSELL, J. This action for partition of lands presents some novel and difficult questions. The plaintiff is one of four sisters, all children of Joel Goodell, deceased. The plaintiff claims the right to partition three-quarters of the lands left by the deceased in hostility to the intent of his will, and yet claims a freehold estate in

the remaining one-quarter by the terms of the will.   To maintain this action for a partition, and also to retain the farm devised to herself for life, she has to successfully establish that the second clause, devising the other lands to her three sisters and Ernest Danforth, is void; that as to such lands there was intestacy, while the will was perfect in its devising effect to convey to her for life, and her heirs afterwards, the title to the farm upon which she lives. The deceased owned, at the time of his death, personal property worth but little more than sufficient to pay his debts.   He left a farm of about 80 acres, on which the plaintiff and her husband resided.   He also left, besides a small pasture lot, the farm called the "Home Farm," on which had been erected a family mansion, more expensive, perhaps, than was needed for the purposes of his life. This home farm comprised about 280 acres, and the comparative values of the farm on which the plaintiff lived, and the home farm with the pasture lot, were about as one to three; so that the plaintiff and her heirs, under the will, would take about one-quarter of his real estate under the scheme of the will.   No question arises as to the validity of the devise in the first item of the will to the plaintiff of the 80-acre farm, except as that devise is affected by the failure of the remaining scheme of the will.   The second item in the will provides as follows:

"All the rest, residue, and remainder of my real estate which I may own at the time of my death, excepting the starch factory lot (should I die seised of the same), I give, devise, and bequeath unto my children, Amelia B., Eliza M., and Mary E. Goodell, to have and enjoy the same as long as they, or the survivor or survivors of them, shall live; and, at the decease of the said Amelia B., Eliza M., and Mary E., the balance of such real estate not above devised shall be the property of Ernest Danforth, now making his home with C. A. Sanford, but, in case of his death prior to the decease of all the three persons—daughters—mentioned in this provision, the survivor or survivors of them shall have full title of such real estate."

The plaintiff was the only married daughter of the four.   The other three were upwards of 40 years of age, and it was probably felt by the testator that they would not marry and leave descendants.   The boy, Ernest Danforth, was a pet of the testator.   The testator evidently thought there was no need of devising the absolute fee to any of his children, and that, with the economical habits in which they had been brought up, the life use was sufficient for their support.   He had so much property to devise and bequeath. He wanted his four daughters to enjoy, each of them, a fair share during their respective lives.   He desired the property devised to Mrs. Sanford to go to her children, if she had any, and, if not, to return to such of her sisters as were living, or their heirs.   He did not desire any part of the home farm, devised to the three unmarried daughters, to go to Mrs. Sanford.   He wanted each share thereof, as it fell in by death, to pass to the survivors, and, when all had departed, the remainder to go to the boy for whom he cared so much. If the shares of the three unmarried daughters were, respectively, unequal in value to the farm devised to the plaintiff, he sought to make up the deficiency by any possible remnant of his personal property after paying his debts.   The scheme of this will is transparent.

Can it be effectuated by the courts, and, if not, can any part of this scheme be preserved intact?

The first question, therefore, which arises, is, was the second devise to the three daughters, and remainder to Ernest Danforth, valid in law? It is apparent that, if the testator had fettered the shares devised, respectively, by the limitations of his will, only to each life taking a share, so that, when death came to either of them, her share went untrammeled, by the binding force of the will, to another, a theory might be evolved under which the power of alienation would not be deemed to have been suspended, as to each share, for more than two lives in being. But such is not the case. When one dies, the share passes, by force of the will, to the other two; on the death of the second, her original share or moiety received from the first deceased sister goes to the third; and upon her death the three shares pass to the young man, Ernest Danforth. Only one contingency obviates this result, and that is, should Ernest Danforth die before the three sisters, they take absolutely. But the law is too well settled to require citation of authority that a devise is void if the power of alienation may in either of two contingencies, or by any natural contingency, be suspended for more than two lives. I am therefore of the opinion that the second item of the will does not contain a valid devise, and that the lands, consisting of the home farm and the pasture lot, went into intestacy, and therefore became the property in fee simple of the plaintiff and her three sisters.

If the case stopped here, the plaintiff, owning under the will the 80-acre farm for life, might maintain partition as one of the four owners of the remaining lands. But we must necessarily proceed to consider the second question which arises. If the intent of the testator can be effected only as to one-quarter of his property, and as to the remaining three-quarters the will must be pronounced void, should the courts pick out a part which they say may be preserved, and abandon the rest, or should they say that the whole scheme falls? The plaintiff's counsel argues that the former of these alternatives must be adopted by the court; that the first item, devising to the plaintiff the 80-acre farm, is a separate and independent clause by itself in the will, and, from the fact of its location in that instrument, it is so separated that the courts have no right to consider it only as a part of a uniform scheme. He also argues that the courts have no right to go further than to pick out the bad parts of a will, leaving the force and effect of the remainder untouched, as though there had been no item whatever, such as is expressed in the second clause of the will, leaving that will to stand, as to the property in question, as though the devise was made to the plaintiff of the 80-acre farm, and no disposition whatever was undertaken by the testator as to the remaining lands. Undoubtedly, there are many cases which may be cited which hold that independent and unconnected clauses of a will may be sustained, while others may be rejected. But the construction of a will is not like the adjudication of a lot of separate instruments conveying property to different persons, which are not tied together by a common

motive and a rounded scheme. The object of the law is to give to a man who owns property the right to say who shall have it after his decease. To prevent fraud, uncertainty, or confusion, that law requires certain formalities to be observed in the execution of that right. The executed instrument is the consummation of those formalities. But, when all is done, the instrument itself is but the evidence of what the testator intended to do and tried to consummate. It is not necessary that he should reiterate in different clauses which are separately numbered, or mechanically parted from the others, that each clause is dependent upon the effect of the other clauses. When he undertakes to provide for the four children and the heirs, and the remainder-man whom he wishes to take in view of the want of prospect of heirs of the three, a single purpose runs through the whole instrument, and the various devises flow from the same motive and in execution of the same general scheme. He assumedly makes his will in the faith that the expression of his intent will be effectuated in law, for otherwise he would not have embodied it in his will. A part of that general scheme, and an important part, was that Mrs. Sanford, the plaintiff, should have the 80-acre farm for life, her heirs the remainder, those heirs possibly being the three sisters, and that neither she nor any of her descendants should ever have any interest in the home farm or pasture lot. If the plaintiff can claim a life interest under the will in the 80-acre farm, and a one-quarter fee of the remaining lands, such claim is in defiance of, and hostility to, the intent of the testator. If the plaintiff shall receive as much in the home farm as either of her three sisters, and, in addition, she and her children obtain the fee of the 80-acre farm, in which her three sisters can have no interest, then the whole scheme of the testator's will is violated. The authorities amply sustain the proposition that, when it is apparent that the essential scheme of the testator is destroyed by the invalidity of a part, the whole consummation of the scheme falls to the ground, as the courts, being unable to carry out the intent of the testator in disposing of his property from his ineffective attempt to exercise his right, leave the whole of his property to the operation of the law in its transmission to those who inherit. McSorley v. Wilson, 4 Sandf. Ch. 515, 519; Coster v. Lorillard, 14 Wend. 268; Hawley v. James, 16 Wend. 61, 5 Paige, 318; Van Beuren v. Dash, 30 N. Y. 426; Harris v. Clark, 7 N. Y. 242. This principle is not limited to the case of a will creating a trust, in which the beneficial devises fail on account of the invalidity of the trust. The rule applies wherever the general scheme of the testator is broken in so important and material parts as to lead to the inference that the testator would not have left the remaining part untouched had he known of the invalidity of the other. The difficulty for courts in applying the rule is in the determination of the question of how far the general scheme is impaired. In the case at bar I am entirely satisfied that the testator would not have knowingly given to the plaintiff and her heirs the fee of one farm, and at the same time a quarter interest in the remaining lands, diminishing by so much the comparative standing of the other three children in

equality as to their father's property. I think that, following this conviction, the court should pronounce the whole will ineffectual so far as it devises realty, and even so far as it divides the personalty.

But a third question arises. Assuming that the testator is defeated in his general scheme by the invalidity of the second item, and yet that the court has not power to reject the real effect of the first item, does any other principle of law aid in producing the same result of equity of heirship as would be arrived at by the rejection of the whole scheme? The doctrine of election is a valuable assistant in the adjustment of equitable rights. It is not precisely the technical doctrine of estoppel which forbids a claim after an act of a party which has been consummated, and which is inconsistent with, and hostile to, such a claim. When rights have been obtained, either of possession or of property itself, by force of a voluntary act, an inconsistent claim cannot afterwards be maintained under the doctrine of estoppel. The doctrine of election applies where both the act and the claim may be in the future. It applies very especially in will cases to compel a choice which, once made, is irrevocable, or, if not irrevocable, may, during the pendency of its operating force, be assumed to control the rights of the parties. It applies specially in will cases. A party may not, as he ought not to, claim the right to property under a will, which will circumscribes and limits his interest in the estate to that property, and that property alone, and yet also claim to break down the barriers binding his interest in the estate as created by the testator, and obtain possession of more. This doctrine is amply sustained by its application in many cases. The acceptance of the terms of a will deprives a party even of a just claim against an estate which is inconsistent with the terms of the will. Caulfield v. Sullivan, 85 N. Y. 153. A widow is estopped from asserting a rightful claim to dower because of an acceptance under a will which is inconsistent with the claim of dower. Chamberlain v. Chamberlain, 43 N. Y. 424, 442. A son is estopped from claiming title to land coming to him from a person other than his father because of his acceptance of a benefit under his father's will. Leonard v. Crommelin, 1 Edw. Ch. 206. See, also, Herm. Estop. 1158–1177; Story, Eq. Jur. 1077–1094; Shivers v. Goar, 40 Ga. 676; Havens v. Sackett, 15 N. Y. 369; Hawley v. James, 16 Wend. 61. All persons connected with the subject-matter upon which the will operates may avail themselves of the allegation of one party to estop her. Herm. Estop. 1183, and cases cited. If this doctrine of election is applicable here (and it would seem that no case illustrates better its reason and necessity), the plaintiff cannot claim an heirship in the home farm, and the devise also of the 80-acre farm, for the two claims are radically inconsistent with the source of title from which each springs, and because, by the claim of one part, she violates the faith upon which the other part was given. What follows? The plaintiff stands as one of the heirs of real estate of her deceased father, and that real estate is, under the construction of the law, owned by the four heirs. Whether the breaking down of the testator's scheme in the disposition of his property throws the whole into in-

testacy, or, by electing to stand as heir, she cannot take in hostility to the scheme of the will, the four daughters are tenants in common of the entire realty left by the testator. It appears from the evidence taken in this case that an actual partition can be made. It appears that the intent of the testator, that his four daughters should use and enjoy the lands accumulated by him during his lifetime so long as they may live, can be carried out and effectuated. In order to consummate this with the accuracy and justice required by law, as in case of actual partition, the court must have the power to appoint commissioners who could set apart, either in four separate shares, or, with the consent of three to take three-fourths in common, to the three, while the other had one-quarter separate from the rest; and, in order to have the judgment effective, those commissioners must have the power to make such partition. Such a partition cannot evidently be made in this action. The complaint and notice of pendency of action filed cover but the home farm and the pasture lot. The 80-acre farm is not within the purview and reach of this action. The plaintiff has not asked to have the pleadings amended so as to bring that 80-acre farm into the jurisdiction of the court. The court has no power to compel this to be done. No effectual partition, therefore, can be made of the lands in which each of the heirs may have a part allotted separate from the rest. The purpose of the action fails, and therefore, on principle, coming to the conclusion which I have, the action cannot be maintained. This conclusion is also fortified by the general rules of practice of this court. Rule 65 provides that, "where several tracts or parcels of land lying within this state are owned by the same persons in common, no separate action for the partition of a part thereof only shall be brought without the consent of all the parties interested therein." I doubt even if, in this case, all of the parties should consent, it would be proper for the court to enforce an actual partition, without jurisdiction by an amended complaint, embracing the lands in which the four heirs have interests as tenants in common, and which the plaintiff has deliberately excluded from the scope of this action. Judgment is therefore ordered for the defendants, with costs against the plaintiff.