MATTER OF RICHARDSON.                    285

Misc. 285]    Surrogate's Court, New York County, August, 1927.

In the Matter of the Estate of BENJAMIN RICHARDSON, Deceased.

Surrogate's Court, New York County, August 2, 1927.

**Executors and administrators — claims against estate — will bequeathed money to " housekeeper "— will was probated in 1889 — action by "housekeeper " to admeasure dower, on ground that she was common-law wife of testator, was election not to take legacy — first accounting was in 1893 — Statute of Limitations, Decedent Estate Law, § 146, has run against legacy — laches shown.**

The testator died in 1889 and his will was probated shortly thereafter. The will bequeathed a sum of money to the testator's " housekeeper." The " housekeeper " shortly after the probate of the will began an action to have her dower admeasured in which she contended that she was the common-law wife of the testator. In order to release the real estate of the testator from *lis pendens* a settlement was effected with the " housekeeper " by the payment of $50,000. Several years thereafter she assigned her legacy to her attorney whose executrix now seeks to have the legacy paid. The act of the " housekeeper " in commencing an action to have her dower admeasured was an election on her part not to take the legacy bequeathed to her. This is so whether or not she could establish that she was the common-law wife of the testator.

Furthermore, the Statute of Limitations found in section 146 of the Decedent Estate Law has run against the legacy, for more than thirty years have elapsed since the first accounting by the executors in 1893. The statute began to run from the first accounting notwithstanding it was not a final accounting.

Furthermore, the objectant here, her testator and the " housekeeper " have been guilty of laches in delaying for nearly forty years to press the payment of the legacy.

ACCOUNTING proceeding by executors and trustees.

*James W. McElhinney,* for the petitioners.

*R. D. Whiting,* for Mary F. Campbell.

*Hamilton & Freeman,* for William H. Hamilton, surviving partner, etc.

*Paul A. Schmitt,* for Martha A. Reade, administratrix of M. Cleiland, minor.

*Perkins, Malone & Washburn,* for Lucy Wood.

*Bauerdorf & Taylor,* for Charles R. Bauerdorf.

[*R. D. Whiting* and *Gilbert D. Lamb* of counsel.]

[*William H. Hamilton* and *Norman C. Conklin* of counsel.]

O'BRIEN, S.   Louise A. Burrill (called Richardson in a Supreme Court action to which reference is hereinafter made) was a housekeeper in decedent's home in Harlem. On the wall inside the front door of the home hung a wooden sign which read as follows:

Surrogate's Court, New York County, August, 1927.    [Vol. 130

" *Notice to agents, peddlars and others: The woman within this house is Mrs. Louise A. Burril my housekeeper. I, Benjamin Richardson am a widower and have been for several years.*"    Richardson died February 20, 1889.   His will, which was dated February 25, 1888, was admitted to probate on March 19, 1889.   He left a very substantial estate.   With the exception of personalty to the amount of about $7,000 the estate consisted solely of real estate.    While he made a few gifts to friends, the bulk of his estate he left to his family, that is, to his son and daughters and to his descendants as in the case of intestacy.   Paragraph " second " of his will reads as follows: " I give to Louise Burrill of New York City the sum of $5,000 in consideration of her valuable services in my family for many years."

Now, three days after the probate of the will the executors paid and Mrs. Burrill accepted fifty dollars on account of the legacy. Six months later, on September 24, 1889, she commenced an action in the Supreme Court under the name of " Louisa Ann Richardson " for admeasurement of dower in forty parcels of real estate, many of which had been conveyed by testator in his lifetime to purchasers under warranty deeds which contained recitals that he was a widower.   In her complaint she alleged that she had been for upwards of twenty years the wife of Richardson and had lived and cohabited with him as such.   In connection with this action a *lis pendens* was filed against all of said real estate. At the time of Richardson's death the real estate was mortgaged up to $900,000 and there were judgments against him for $124,000 for which a blanket mortgage had been given.   The *lis pendens* having been filed, it was impossible to sell any of the realty. Mortgagees were threatening foreclosure and one, Connecticut Mutual Life Insurance Company, began a foreclosure action.   In the face of the conditions surrounding the estate it is plain that the action for dower was calculated to endanger the whole estate and almost precipitate insolvency.   Numerous motions in this action followed and finally all the heirs at law and next of kin requested the executors to settle the claim for dower and all joined in the execution of a bond and three mortgages upon the real property of the estate to secure the payment of the amount named in the settlement, viz., $50,000.   The executors paid $5,000 on account of the principal of the mortgage and later paid the balance of $45,000.   This latter amount was, in fact, borrowed money, the estate lacking funds at the time with which to make the payment.

By an order entered on March 21, 1891, the action was by consent of all the parties discontinued and in the agreement to discontinue the claimant released the estate forever from " *all her*

Misc. 285]     Surrogate's Court, New York County, August, 1927.

*claims as set forth in the complaint in the action hereinbefore referred to and all the right, title and interest, dower and right of dower which she now has or claims in said action to have in and to the premises described in said complaint."* Four years thereafter, viz., on April 5, 1895, Louise Burrill assigned the legacy of $5,000 to her lawyer, William O. Campbell. Subsequently and in the same year Campbell called at the office of Washburn, one of the executors, and told him of this assignment and said: " When are you going to pay it? " According to the testimony of the witness Gale (p. 42) Washburn said: " I am not going to pay it," and he said: " Why not? " Mr. Washburn said: " I have already settled with the widow and I have no right to pay it. She elected to take $50,000 for all her claims and I will not pay the legacy * * *." Mr. Washburn told him what his remedy was if he wanted to collect the legacy, and told him to go to the surrogate. Campbell called upon Washburn three times, according to Gale. The witness McElhinney testified that Campbell told him of the assignment and " that he had been to Mr. Washburn to try to collect it," and that he said to Campbell, " What did Mr. Washburn say * * * " and that Campbell replied: " He laughed about it and pooh poohed it." This conversation between McElhinney and Campbell took place some time between 1895 and 1901. The testimony of these witnesses Gale and McElhinney is the only evidence on the record of any demand being made by Campbell, as assignee, for the payment of the legacy, excepting the demand made in the present accounting by the latter's widow as executrix. There were eight accountings made before the present accounting by the executors and trustees of this estate, each of which presented an opportunity to the legatee, Mrs. Burrill, and her assignee, Campbell, to demand payment of the legacy and force a decision upon the claim for payment. Yet thirty years passed by since the refusal of the executor William T. Washburn to pay the legacy without any effort on the part of Campbell to force payment in this interim. *Mrs. Burrill died in June, 1897. The executor, Wm. T. Washburn, died October 22, 1916, and executrix Emma Richardson died May 4, 1907. Moreover, Campbell died December 28, 1912. Nearly all of the attorneys who represented parties to the various litigations in this estate, all of the judges and surrogates and the referee who sat at the various proceedings and trials have likewise passed away.* These are the essential facts brought out at the trial so far as they affect the issues raised by the objections filed to the account by Mary Frances Campbell, as executrix of the estate of William O. Campbell, assignee of Louise A. Burrill. These objections are overruled upon the following grounds: (1) When Louise A. Burrill began an

action for dower against the executors of this estate and others she not only undertook to upset the whole testamentary scheme of testator but brought the estate itself to the very brink of insolvency. Her act constituted an election not to receive the legacy bequeathed her of $5,000 but to take a dower interest in said estate; and when she was paid $50,000 to settle that suit she then and there completed the forfeiture of said legacy. Counsel for the administrators c. t. a. went to great pains to prove that Mrs. Burrill was not the common-law wife of Richardson, having in mind the developing of some highly refined argument in favor of the theory of election. It was not necessary for the purposes of their case to establish this fact. Common-law wife or no common-law wife, Louise A. Burrill was in effect declared by testator in his will to be his housekeeper. When we recall the testimony of the sign that hung on the wall in testator's house, the language in paragraph 2 of the will means more than the literal words used therein. It meant by direct inference that she was not testator's wife, and it manifests the purpose on the part of testator to meet in this wise any subsequent claim on her part that she was his common-law wife. When, therefore, she began the action for dower and alleged that she had been his wife for many years she renounced her right in the legacy and elected to claim and secure dower in his estate. Nor can it be successfully argued that the claiming of right to dower was not inconsistent with her right to the legacy given for faithful services in his family for many years, for what ideas are so repugnant as the reward for faithful services on the one hand and the marriage relationship on the other. Howsoever debatable these propositions may be, there is no question to be discussed when we consider the act of Mrs. Burrill in beginning her action for dower. It was inconsistent with the will and all of its provisions, it was calculated to be destructive of the estate as it was subversive of the whole testamentary scheme. If there be any case in the history of litigation in this State where the doctrine of election should apply, this is such a case and, therefore, I hold that she could not take under testator's will and against the will. Abundant authorities support this conclusion. The principle involved is tersely expressed in *Thellusson* v. *Woodford* (13 Ves. 209); *Havens* v. *Sackett* (15 N. Y. 365); Story's Equity Jurisprudence (Vol. 2, § 1075 *et seq.*); Pomeroy's Equity Jurisprudence (Vol. 1 [3d ed.], § 461, etc.); *Gibbins* v. *Campbell* (148 N. Y. 410, 414); *Beetson* v. *Stoops* (186 id. 456, 461); *Shanley* v. *Shanley* (22 App. Div. 375); *Caulfield* v. *Sullivan* (85 N. Y. 153, 158); *Chipman* v. *Montgomery* (63 id. 221, 234); *Sanford* v. *Goodell* (7 Misc. 334, 340). (2) The Statute of Limitations has run against

MATTER OF RICHARDSON. 289

Misc. 285]   Surrogate's Court, New York County, August, 1927.

the collection of this legacy. Section 146 of the Decedent Estate Law (added by Laws of 1920, chap. 919) reads as follows: " If, after the expiration of one year from the granting of letters testamentary or letters of administration, an executor or administrator refuses, upon demand, to pay a legacy, or distributive share, the person entitled thereto may maintain such an action against him, as the case requires. But for the purpose of computing the time, within which such an action must be commenced, the cause of action is deemed to accrue, when the executor's or administrator's account is judicially settled, and not before."

The statute by its terms started to run against the collection of this legacy by suit at the time of the first accounting which was in 1893. In this accounting Louise Burrill was cited as a necessary party. No objection was interposed by her at that time that there was no provision made for the payment of this legacy to her and the Statute of Limitations started to run against the collection of this legacy at that time. The contention of the objectant that the first accounting was not a final accounting is untenable for the reason that section 146 of the Decedent Estate Law does not limit the application of the statute to a final accounting. (3) The objectant Mary Frances Campbell, her testator and his assignor have been guilty of inexcusable laches in pressing the claim to the legacy. In this connection it should be borne in mind that the will was admitted to probate March 19, 1889. Moreover the first accounting was had in 1893. The action for dower was begun in 1889 and discontinued March 2, 1891. There is nothing in the record to show any attempt on the part of Mrs. Burrill to claim, demand payment of or collect the legacy at any time. Four years afterward, viz., in 1895, she assigned the legacy to Campbell. He made an oral demand for the payment of the legacy in that year and payment was refused. Thirty years and more elapsed since that refusal and not a move was made to press the payment of the legacy or the determining of the question. In this interim of thirty years eight different accountings were filed and so far as it appears in this record, Mrs. Burrill or her assignee, Campbell, was cited in each; yet not a voice was raised demanding payment of the legacy. It is unnecessary to discuss here in detail the method they could have adopted to compel payment or to force decision upon the question whether the legacy was in full force and effect. During these years and years of delay, the legatee, Mrs. Burrill, died, the executors died, Campbell died, other attorneys and other probable witnesses to the negotiation of the settlement of the dower action died. Surely equity should deny relief to parties

19

who have slept on their rights for so many years and until those have long since passed away who could testify to the facts concerning the action for dower and its settlement. The excuse offered by the objectant that the present demand for payment is not late since the will provides as follows: " I hereby direct my said executor and executrix to sell all said real estate from time to time as the same can be sold to advantage and out of the avails thereof to pay all my just debts, all the incumbrances upon said real estate and all the legacies herein given," etc., and that only in 1926 was the property sold to advantage and funds available for legacies secured, lacks all force when we consider that the legatee, her assignee and the latter's executrix have waited over a third of a century to press their claim while they had opportunities in eight different accountings to demand payment and other effective remedies at hand to establish their position as legatees. (*Kellogg v. Kellogg,* 169 App. Div. 395, 408, 411.) Proceed accordingly.