(22 Misc. Rep. 749.)

## SCOTT v. IVES et al.

(Supreme Court, Special Term, Jefferson County. February, 1898.)

1. WILLS—CHARITABLE BEQUESTS—VALIDITY.

Laws 1860, c. 360, provides that no person having a wife shall by his last will devise to any benevolent, charitable, or religious society or corporation more than one-half of his estate after the payment of his debts, and such devise shall be valid to the extent of one-half, and no more. *Held*, that the fact that a devisee or legatee under a will is a foreign institution of the kind referred to in the act, and its charter or the law of the state of its domicile does not restrict it in receiving bequests, does not remove it from the operation of the limitation of the act.

2. ATTORNEY AND CLIENT—PRIVILEGED COMMUNICATION.

Where an attorney drawing a testator's will sends for the testator's wife, to consult with her regarding her rights under the will, what she said in the conversation in relation thereto is a privileged communication, under Code Civ. Proc. § 835.

3. WILLS—CONSTRUCTION.

Evidence that the wife of a testator about to make his will insisted, in a conversation between the testator, his attorney, and herself, that more ample provision should be made for her, but that, when that was denied her by the testator, she said that under no circumstances would she contest the distribution of his property, is immaterial for any purpose in the construction of the will, or to vary its terms.

4. SAME.

The following words of a codicil: "But I do not expect that she (my wife) will object to the plan of my will and codicil, and I have always believed her to be in sympathy with my benevolent designs,"—clearly indicate that no agreement had then been made between the testator and his wife that she would not object to the plan of his will and codicil.

5. WILLS—CONTEST BY WIDOW.

Where a wife made no objection to the probating of her husband's will, commenced no action to have it declared void, and, being made defendant in an action by the executor to construe it, united with other defendants in asking that it be interpreted according to law, and, through her answer by counsel, suggested the legal questions involved, this is not a contest on her part, estopping her from taking under a provision of the will that bequests to her should not take effect if, for any reason, she contested the same.

6. SAME—ESTOPPEL.

The wife of a testator, who continued to live on the farm where he died, the use of which he willed to her for life, and, with the consent of the executor, rented the same when a lessee's term expired, and accepted from the executor certain semiannual payments provided for by the will, with the understanding that the receipt thereof should not affect her rights under the will, or to the testator's property, is not thereby disqualified from asserting her full rights under the same.

Action by Ross C. Scott, as executor, etc., against Lucina M. Ives and others, to construe a will. Construed, and ordered accordingly.

Smith & Smith, for plaintiff.

Rogers & Atwell, for defendant Lucina M. Ives.

G. S. & H. L. Hooker, for G. S. Hooker, as guardian ad litem for Florence M. Howes and others.

John Conboy, for Mary Bliven.

Bradley Winslow, for Jennie H. Smith and others.

W. A. Nims, for American Bible Society and others.

B. A. Field, for defendant Elmer T. Hall.
Kellogg & Cobb, for defendant Emily Foot.
Purcell & Carlisle, for defendants J. A. White and others.
E. R. Wilcox, for defendants George H. Hall and others.
I. L. Hunt, for defendant Julia A. Weidman.

McLENNAN, J. Willard Ives, who resided in the city of Watertown, Jefferson county, N. Y., died on the 19th day of April, 1896, leaving neither father, mother, sister, brother, child, nor descendant of any child, but left a widow, the defendant Lucina M. Ives. At the time of his death he was about 90 years of age, and his widow was about 77 years of age. He left a last will and testament which bears date October 17, 1891, and a codicil thereto which bears date February 17, 1896. By said will and codicil Mr. Ives assumed to dispose of his entire estate, consisting of both real and personal property, and amounting in the aggregate to about $175,000. The real estate constituted a very small part of the estate, and did not exceed in value the sum of $10,000. By the will the testator bequeathed to his wife, Lucina M. Ives, the use of a farm, of the value of about $5,000, during her natural life; also, the personal property thereon or connected therewith, absolutely, but which amounted to only a few hundred dollars. He also bequeathed to her an annuity of $1,000 ($500 to be paid semiannually) during her natural life; and he directed his executors to select such securities belonging to his estate, or to invest such sum, as would be sufficient to pay such annuity. All the rest, residue, and remainder of his estate he bequeathed to the—

"Following institutions, to be permanently invested by each of said institutions, and the income of such several investments to be used in the manner to be determined by the several boards of trustees of said institutions, and each of said investments shall be styled 'The Willard Ives Fund,' namely: The American Bible Society, 25 per cent. of my estate, including both real and personal property. The Missionary Society of the Methodist Episcopal Church, 25 per cent. thereof. The Ives Seminary, 15 per cent. thereof. The Freedmen's Aid Society of the Methodist Episcopal Church, 10 per cent. thereof. The Methodist Episcopal Hospital in the City of Brooklyn, 5 per cent. thereof. The American University, 5 per cent. thereof. The Union Missionary Training Institute, 5 per cent. thereof. The Board of Church Extension of the Methodist Episcopal Church, 5 per cent. thereof."

The will further provided as follows:

"And it being my intention to dispose by this will of all my estate, real and personal, I hereby give and bequeath any and all residue and remainder of my property that may not have been disposed of by the foregoing paragraphs of this will to the several institutions hereinbefore named, in the same ratio and proportion by which I have made the several bequests to them severally hereinbefore."

And it further provided:

"And in case any of said institutions or corporations shall not accept, or shall be incapable of taking, under this will, then I give what would otherwise have gone to such corporation or corporations to the other corporations named, in the ratio and proportion by which I have made the several bequests to them severally."

· By the said will the testator appointed the defendant Lucina M. Ives, his wife, and the plaintiff, Ross C. Scott, of Watertown, N. Y., executors, and clothed them with the power of sale, in the following language:

"And I hereby authorize them to sell and convey, by proper deeds, any and all of my real estate, or to contract for the sale of the same, and to lease the same, or any part thereof, and for the purposes of this will; reserving always, however, the life estate hereinbefore created in favor of my beloved wife. And I authorize them to convert my property into money, or to deliver to said institutions securities and stocks, at their market value, in payment of the said several legacies, in part or in full, upon their election to receive the same. My said executors may select from my securities sufficient of stock and securities to yield the said semiannual payments of $500 to my said wife, or make investments for that purpose."

It is evident that the testator, by the will as thus made, intended that his wife, the defendant Lucina M. Ives, should have the use of the farm above referred to during her natural life; that she should have the personal property upon said farm and connected therewith, the household furniture, etc., absolutely; and that in addition she should have $500 semiannually during her natural life, to be derived from the income of securities owned by the testator, or to be derived from investments made by his executors out of his property. The balance of his estate then remaining, if any, or remaining after the death of his wife, whether consisting of real or personal property, he devised to the several institutions above named, according to the percentages therein named; and that, if any of said institutions were for any reason incapable of taking, the institutions capable of taking were to receive the share of the institutions incapable of taking, in proportion to the percentages named in the will. As before said, on the 17th day of February, 1896, the said Willard Ives executed a codicil to his said will, in and by which he revoked and annulled the bequests to the Ives Seminary and the Union Missionary Training Institute contained in said will, and in place thereof assumed to bequeath to the Ives Seminary the sum of $30,000, by the following language:

"By this, my codicil to my last will and testament, I give to the Ives Seminary, located at Antwerp, Jefferson county, and state of New York, an institution of learning incorporated by the board of regents of the state of New York, the sum of thirty thousand ($30,000) dollars, to be safely invested by the said Ives Seminary, and the income thereof to be applied for the benefit of the said seminary, so long as and upon the condition that said seminary shall be in good faith recognized and supported as a seminary under the charge and supervision of the conference of the Methodist Episcopal Church within whose jurisdiction said seminary shall be. The board of trustees of said seminary shall invest said moneys in good, safe, income-paying securities, and keep the principal sum unimpaired, and the income thereof shall be applied according to the directions of the said board of trustees. In case the said conference of the Methodist Episcopal Church shall at any time cease to exercise supervision over said seminary, and shall cease to give to the same moral support, this bequest shall terminate; and in such case I give and bequeath absolutely said principal sum to the American University, named and described in my will at paragraph 2, subdivision 6."

And in addition to the annuity of $1,000 ($500 to be paid semiannually) bequeathed to his wife, the defendant Lucina M. Ives, he gave to her, by the codicil, an additional sum of $500, payable semi-

annually during her natural life, which would make her annuity
the sum of $2,000 per annum; the payment of such annuity to be
secured in the same manner as provided in and by the will.   The said
codicil also contained this provision:

"All bequests to my said wife in my will and in this codicil shall not take
effect if, for any reason, she contests my will or this codicil; but I do not ex-
pect she (my wife) will object to the plan of my will and codicil, and I have al-
ways believed her to be in sympathy with my benevolent designs.   I hereby,
as modified by this, my codicil, ratify my last will and testament as aforesaid;
and, as so ratified, my will and this codicil express my clear purpose that my
property shall forever benefit the good."

It is clear that the purpose of the testator by his will, as modified
and changed by the codicil, was that his wife, the defendant Lucina
M. Ives, should have the use of his farm situated in Jefferson county,
N. Y., during her natural life; that she should have absolutely the
personal property upon said farm or connected therewith, the house-
hold furniture, etc., and that she should have annually an income
of $2,000 during her natural life, to be paid to her from the income
of securities from his estate, or from investments made by his execu-
tors from the avails of his estate, and that then the Ives Seminary
should have $30,000, and that the other institutions above named
should receive the remainder in the proportions named in the will,
and that, after the decease of his said wife, the farm, and the prop-
erty or securities from which the annuity of $2,000 a year to her was
to be derived, should be distributed between such institutions above
named, except the Ives Seminary, in accordance with the percentages
named in the will; and that, if any of said institutions named were
incapable of taking, the institutions capable of taking would receive
the share of the institution or institutions incapable of taking, in
the proportion named in the will.   The said will and codicil were
duly admitted to probate, without objection, on the 30th day of July,
1896, and the plaintiff duly qualified as sole executor; the other execu-
tor named in the will, the defendant Lucina M. Ives, having refused
to qualify.   The plaintiff, as sole executor, brings this action to
obtain a construction of the will and codicil; and the widow, the
defendant Lucina M. Ives, the institutions named as legatees above
named, also the heirs and next of kin of the testator, are all made
parties defendant.
   It is urged on behalf of the widow, Lucina M. Ives, and on behalf
of the defendants the heirs and next of kin of the testator, that the
bequests to the institutions above named, in excess of one-half of the
estate of the testator, are void, under chapter 360 of the Laws of
1860, and that, as to such one-half of his estate, Willard Ives died
intestate.   The attorney for the institutions above named insists that
the bequests to them are valid, to the full extent of the personal
property, at least, for the reason that the widow is estopped from
questioning the provisions of the will, and that she has elected to take
under the will.   This is also the contention of the plaintiff.   It is
also contended that certain institutions are not affected by the statute
of 1860, and that, therefore, under the provisions of the will, such
institutions are entitled to take the share or the proportion of the

share which would have gone to the institutions which are subject to the provisions of the statute in case such act applies. The act of 1860, above referred to, provides as follows:

"No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half of his or her estate, after the payment of his or her debts (and such devise or bequest shall be valid to the extent of one-half. and no more)."

It is conceded that the defendants the American Bible Society, the Missionary Society of the Methodist Episcopal Church, the Ives Seminary, the Methodist Episcopal Hospital in the City of Brooklyn, and the Board of Church Extension of the Methodist Episcopal Church, fall within the provisions of the act of 1860; but it is urged that the defendants the Freedmen's Aid Society of the Methodist Episcopal Church and the American University being foreign corporations, and there being no inhibition in their charter against taking by devise any part of the testator's estate, the statute is not operative as to them, and that, therefore, the property of the testator, in excess of one-half, should go to said two institutions, under the residuary clause of said will. Concededly, all of the institutions named in the will are either benevolent, charitable, literary, scientific, religious, or missionary in their character, and so come within the provisions of the act of 1860. The fact that the two institutions, the Freedmen's Aid Society of the Methodist Episcopal Church and the American University, are foreign corporations, or that their charter or the laws of the state of their domicile do not restrict them in the matter of receiving or taking bequests, is of no consequence. This was expressly held in the case of Trustees v. Ritch, 151 N. Y. 282, 45 N. E. 876. At page 333, 151 N. Y., and at page 890, 45 N. E., the court say, per Vann, J.:

"The statute in question [the act of 1860] is not a mortmain act. The policy of the state upon the subject appears in a few general, and many special, statutes, passed at various times. The Revised Statutes present an example of the former when they provide that 'no devise to a corporation shall be valid unless such corporation be expressly authorized by its charter or by statute to take by devise.' 2 Rev. St. p. 57, § 3. The charters of various corporations illustrate the other class of legislation by limiting the amount they can take by devise or otherwise. In re McGraw's Estate, 111 N. Y. 66, 107, 19 N. E. 233. The object of all these statutes is to 'prevent accumulations of property in the hands of institutions which take no part in the productive activity of the community.' They act upon the power of corporations to take and hold, not on the power of a testator to give. The authorities relied upon by the appellants are, to a great extent, judgments pronounced when these statutes, thus expressing the policy of the state against the concentration of wealth in mortua manu, were under consideration by the courts. The decisions under the mortmain acts of England are equally inapplicable when the difference between those acts and the act of 1860 is borne in mind. That statute [act of 1860] is of a different character from any of those mentioned. It does not prevent charitable corporations from taking, but forbids a testator who has a wife, child, or parent from giving more than one-half of his estate after the payment of his debts. Chamberlain v. Chamberlain, 43 N. Y. 424, 440. It does not prohibit charitable gifts altogether, but only under certain circumstances, to a certain extent, and by a certain method. If the gift is not made by will, or if made by will, and the testator leaves no surviving relative of the degree named, or it is to charities other than those mentioned, there is no prohibition. It does not compel a

testator to leave his property, or any part thereof, to relatives. It does not prevent him from giving all that he has to charity during his lifetime. It is aimed simply at the giving of an undue proportion to charity by will, when certain relations have, in the opinion of the legislature, a better claim. As was said by Judge Allen in Chamberlain v. Chamberlain, 43 N. Y. 424, 440, its object 'was to prevent a person upon whom others, standing in near relation, had claims, from disappointing their just expectations, and disinheriting them, from pious or philanthropic motives; and the intent was to include all public objects, whether religious, charitable, or literary.' Its theory is not to keep property away from charitable corporations, but to prevent a testator from giving more than one-half of his net estate at the expense of his wife, child, or parent. Its sole purpose is to protect those natural objects of his bounty from improvident gifts, to their neglect."

It would seem, therefore, upon authority, that each of the defendant associations or corporations above named are subject to the restrictions of the act, and that they cannot receive, under the will of the testator, to exceed in the aggregate one-half of the property of which he died seised; and this regardless of the fact that some of such associations or corporations may have been organized under the laws of a foreign state, and that their charters or the laws of such state may not in any way have limited their right to receive bequests of the character in question. In other words, it would seem to be the settled law of this state that a testator is prohibited from devising to any corporation which comes within the definition of the act of 1860 more than one-half of his property, regardless of the status of such corporation, either as to the provisions of its charter, or as to the laws of the state in which it is domiciled; that the statute is not aimed against the associations or corporations, but is against the testator, and prohibits him, in case he has a wife, child, etc., from devising more than one-half of his property to any benevolent, charitable, scientific, or missionary society. It would seem, therefore, independent of any other fact or consideration, that Willard Ives died intestate as to all of his property in excess of one-half of the same, and that, if there were no other considerations, the personal property would go to his widow, the defendant Lucina M. Ives, and the real estate to his heirs and next of kin.

It is urged, as before suggested, on behalf of the plaintiff, and also on behalf of the associations above named, that the defendant Lucina M. Ives is estopped from claiming under the will of the testator, in excess of the amount bequeathed to her, for the reason—First, that she assented to the provisions of the will and codicil made by the testator, and agreed not to contest the same; and, second, because she has accepted the benefits under such will, and therefore is estopped from objecting to the same. It therefore becomes important to determine what was the attitude of the defendant Lucina M. Ives in respect to the will and codicil in question. The will was made and executed in the ordinary way, so far as appears. The testator was informed by the attorney who drew the will that its provisions might be annulled or modified by reason of the act of 1860. Notwithstanding such information on the part of his attorney, he insisted on making the will in question. He was told, apparently, in order that the institutions named as defendants might receive the be-

quests named in the will, that it would be necessary that no one should contest the same; in other words, that the provisions of the will were illegal, and that any one interested was competent to have such illegality declared. It also appears that he was informed that he could intrust his property to his executor, relying upon the good faith and integrity of his executor to carry out his (the testator's) intention in respect to his property, but without any directions so to do; that the testator, under all the circumstances, decided to make the will as it now is.

After such will was prepared and executed, and when the testator was sick, and his life despaired of, the attorney who prepared the will, and who was the confidential adviser of the testator, sent for his wife, the defendant Lucina M. Ives, and explained to her the imperfections in the will under the statute, and stated that such provisions could not be effectual unless she consented thereto. It was offered to be proved in this case by the attorney that the widow, the defendant Lucina M. Ives, thereupon stated to the attorney who had sent for her that she was satisfied with the provisions of the will, and that in no case would she raise any objections to the same. Upon the trial it was held that such evidence was incompetent, under section 835 of the Code of Civil Procedure, upon the ground that it was a privileged communication, and that notwithstanding the fact that she (the wife) had not employed the attorney, but because she was sent for and consulted by him, as attorney, in respect to her rights under the provisions of her husband's will, what she said upon that occasion respecting her rights and interest under such will were privileged communications. A careful examination of the authorities cited has led me to the conclusion that the holding was correct, and that such evidence should not be permitted in the case. It was also offered to be shown that, at the time the codicil in question was made, the testator and his wife, in the presence of the attorney, had a conversation in which the provisions of the will and of the codicil were discussed; that the defendant Lucina M. Ives insisted that more ample provisions should be made for her, but that, when that was denied her by the testator, she said, in substance, that under no circumstances would she contest, or object to his purposes in the distribution of his property. It is believed that such evidence was immaterial for any purpose in this case; that it is not competent by oral agreement to make a will different from that expressed by the formal instrument. In other words, it is sought by oral conversation to establish a will in contravention of the statute, and evidently with the intent of the evasion of the statute. If the purpose of the statute, as has been said, is to prevent a person, when approaching death, under religious fervor or excitement, from disposing of his property for religious purposes to the exclusion of his kindred, then it is equally important that the wife or child should be protected against such influences as might induce her, in the presence of death, to assent to the consummation of such purposes. It is believed, and so held, that the conversations between the attorney and the defendant Lucina M. Ives, so far as material upon any issue in this case, were privileged communications, and there-

fore properly excluded upon the trial. It is not pretended.that any valid agreement was made between the testator and his wife, in regard to the provisions of his will. Certainly no consideration passed to her, to support such agreement. At the most, he told her he was going to do just what he did do in respect to his property. She objected; declared, in substance, that he ought to make more ample provision for her. But, when she found he was determined, she said, in substance, that he might do as he liked; that she would not interpose any objection. That the testator did not rely upon such statement is clear from the words of the codicil: "But I do not expect she (my wife) will object to the plan of my . will and codicil, and I have always believed her to be in sympathy · with my benevolent designs." These words clearly indicate that no agreement had at that time been made between the testator and his wife that she would not object to the plan of his will and codicil. It is further evident that no secret trust was created. The testator did not give to his wife any property, or add to or omit from his will or codicil any clause or provision, on account of the fraud or misrepresentation of his wife. She made no promise or suggestion as to what she would or would not do, in case any part of the estate came to her. A secret trust has never been declared under such circumstances. It cannot be said that any act or word of the wife induced the testator to make the will he did make. On the contrary, she urged him not to make it. She practiced no fraud, made no statement which induced him to act, made no promise which he relied upon; and it is therefore held that the conversation sought to be given by the attorney for the testator was immaterial, as bearing upon any of the issues involved in this action.

By the original will the testator bequeathed to the defendant the Ives Seminary 15 per cent. of his entire estate, and the balance of his estate was bequeathed to the other institutions named in the will. By the codicil he gave to Ives Seminary $30,000, and to the remaining institutions named in the will the balance of his estate, according to the percentages named therein. There is nothing to indicate that the purpose of the testator was changed in respect to the Ives Seminary, to the extent, at least, of providing that it should have the full amount of $30,000, independent of what sum the other institutions might take. It is believed that as the bequests to the other institutions must, of necessity, under the provisions of the statute of 1860, be reduced one-half, the bequest to Ives Seminary should also be reduced one-half.

It is not believed that the defendant Lucina M. Ives is estopped from taking under the will by reason of her attitude in respect to it, or in respect to this litigation. When the will and codicil were offered for probate, she made no objection; she commenced no action to have the will or any of its provisions declared void. The executor, as before stated, commenced this action, and made her a defendant. She then, through her counsel, made certain suggestions by her answer, and upon the trial, which would present the legal questions involved; uniting substantially with the plaintiff in asking that the provisions of the will and codicil be interpreted in

accordance with the laws of the state. This is not a contest on her part, within the meaning of the will, and she is therefore not precluded from taking under its provisions. Neither has her action in respect to the property since the decease of the testator in any way disqualified her from asserting her full rights. She continued to live in the house and upon the farm where the testator died, the use of which, by the terms of the will, she was given during her natural life. The term for which the farm was rented having expired, and the executor having neglected to make arrangements with another tenant, she assumed to do so with his full consent and authority. In other words, she made arrangements by which the farm of which she was given the life use should be cared for, looked after, and cultivated in a proper manner. Certain of the semiannual payments had been made to her by the executor, but always, as appears by the evidence, under the express understanding and agreement between her and the acting executor that the receipt of such payments by her should in no way affect her rights under the will, or to the property of the testator.

It follows that the exact amount of the property, both real and personal, of which the testator died seised, should be determined; that the amount of the costs allowed and directed to be paid out of the estate should be deducted from the entire amount of such property; that one-half of the remainder of the estate should go to, and be paid to, the following institutions named in the will, to wit: Fifteen thousand dollars to Ives Seminary; $25/75$ of the remainder of said one-half to the American Bible Society; $25/75$ thereof to the Missionary Society of the Methodist Episcopal Church; $10/75$ thereof to the Freedmen's Aid Society of the Methodist Episcopal Church; $5/75$ thereof to the Methodist Episcopal Hospital in the City of Brooklyn; $5/75$ thereof to the American University; $5/75$ thereof to the Board of Church Extension of the Methodist Episcopal Church. It will be observed that, after giving to Ives Seminary the $15,000, only 75 per cent. of the one-half of the testator's property is specifically devised by percentages, and that the remainder of said one-half, to wit, 25 per cent., is to be divided in the same proportion, and so on as to each remainder indefinitely; but clearly it was the intention of the testator to dispose of his entire estate, and therefore it is proper that the one-half of the testator's property remaining after the payment of the bequest to Ives Seminary should be distributed among the other institutions named. This result, it is believed, is accomplished in the manner above stated. All of said bequests to said institutions above named should be paid out of the personal property of the testator. The balance of the personal property of which the testator died seised, after paying the bequests above named, should be paid to the widow, Lucina M. Ives. The widow is also entitled during her natural life to the use of the farm of the testator, situate in the city of Watertown, Jefferson county, N. Y.; and she is also entitled to receive the personal property upon said farm and connected therewith, the household furniture, etc., absolutely. All of the real estate of which the testator died seised belongs to, and should go to, the defendants the heirs and next of

kin of the testator mentioned and described in the complaint; and, after the death of the defendant Lucina M. Ives, the said farm described in the complaint should also go to, and belong to, said heirs and next of kin. If the parties to this action do not agree as to the value of the personal property of which the testator died seised, or as to the value of the real estate of which he died seised, further proof may be taken upon that question, or a referee may be appointed to take the evidence in respect thereto.

Ordered accordingly.